# MACFARLAND

*v.*

# UNITED STATES OF AMERICA EX REL. MILLER.

BUILDING REGULATIONS; SUBDIVISIONS OF LAND; MANDAMUS.

1. Section 34 of the building regulations, providing that blocks of two or more dwelling-houses shall not be erected until the land upon which they are to be· erected has been subdivided, so that each house shall have a separate lot, unless a special permit be granted in each case by the Commissioners of this District, is not a building regulation within the meaning of the act of Congress, authorizing the Commissioners to make and enforce building regulations; and the Commissioners have no right to refuse to issue to the owner of a lot thirty-two feet wide and forty-six feet and four inches deep, a permit to erect two houses thereon, where their refusal is based solely upon that provision of the building regulations and upon section 6 of their rules, regulating the subdivision of lots, which section provides that lots may only be subdivided into lots not less than sixteen feet wide and fifty feet deep.
2. Where the proposed buildings of an applicant for such a permit conform in respect of materials, safety, and healthfulness to the building regulations proper, it is the duty of the Commissioners to issue the permit upon the payment of the lawful fees, and the act required of them, being a purely ministerial one, can be enforced by the writ of *mandamus;* following Roberts v. Valentine, 13 App. D. C. 38.

No. 1100. Submitted October 3, 1901. Decided November 5, 1901.

HEARING on an appeal by the respondents, the Commissioners and the building inspector of the District of Columbia, from a judgment of the Supreme Court of the District of Columbia, directing a peremptory writ of *mandamus* to issue to them requiring them to grant a permit to the relator to erect certain dwelling-houses on land owned by him. *Affirmed.*

The COURT in its opinion stated the case as follows:

This is an appeal from a judgment of the Supreme Court of the District of Columbia ordering a peremptory writ of

*mandamus* to issue to the Commissioners, and to John B. Brady, building inspector of the District, compelling the grant of permission to the relator, Frederick J. Miller, to build upon certain lots in the city of Washington according to a plan presented by him.

The petition filed by the United States on the relation of Frederick J. Miller alleges the following facts:

1. Relator is a citizen of the United States, residing in the District, and since October 4, 1900, has been the owner in fee-simple of certain land in the city of Washington, known as part of original lot 1 in square numbered 950. The said part of lot has a front of thirty-two feet on Tenth street, and a depth of forty-six feet and four inches; and is unimproved.

2. Relator proposed to erect on said land two two-story and basement brick dwellings with six rooms each; each house was planned to front sixteen feet on Tenth street and extend back thirty-six feet, thus covering the entire frontage and leaving an open space in the rear of ten feet and four inches, which is wider than that required by the building regulations of the District Commissioners.

3. The plans and specifications for said houses were prepared by an architect and conformed, in respect of materials, safety, etc., to the requirements of the said building regulations and the suggestions of the inspector.

4. Application was then formally made to said inspector as required for the necessary permission to commence building; but this was refused, "not because of any want of conformity of said plans and specifications to the building regulations in the matter of materials, workmanship, and provisions for the safety of the public, and the health of the persons who might inhabit said houses when completed, but because said land was not subdivided as required by the provisions of the building regulations, relating thereto."

5. Section 34 of the building regulations declares that "no dwelling-house less than sixteen feet wide shall be erected; provided, however, that any existing lot that is

not less than twelve feet wide, and which is a part of a duly recorded subdivision, may have a dwelling erected thereon the full width of the lot. Blocks of two or more dwelling-houses shall not be erected until the land upon which they are to be erected has been subdivided, so that each house shall have a separate lot, unless special permit be granted in each case by the Commissioners."

A fee is provided for each "permit," and a penalty for failing to obtain the same before building.

6. Pursuant to authority of an act of Congress, the Commissioners had also promulgated rules regulating the sub-division and record of subdivisions of lots. Under these, plats were to be certified and filed in a certain manner, and section 6 of the same, provides that lots may only be sub-divided into lots not less than sixteen feet wide and fifty feet deep. Certain exceptions are permitted, which are not material here.

7. Relator applied to the District surveyor, with tender of fees, etc., as required, to make and certify a plat for record dividing his sublot of thirty-two feet by forty-six feet and four inches, into two lots each with sixteen feet frontage on Tenth street.

This was refused, and upon application to the Commissioners they declined to order the same done.

8. The Commissioners refuse to allow the building permit, "because the said proposed lots are not of the required depth of fifty feet, and for no other reason."

9. "Relator further avers that the depth of fifty feet required for each lot, before a permit to erect a building shall under any circumstances be granted, is not necessary to health and safety in the construction of dwellings, but is an arbitrary and unnecessary requirement." And further, that prior to the promulgation of the regulations, many such buildings had been erected and are "still standing and occupied, and are safe and healthful habitations."

10. Averring tender of the lawful fees, and renewing the offer to pay the same, the prayer is for a judgment commanding the issue of said permit, etc.

The return of the Commissioners to the preliminary order to show cause, (1) admits the substantial allegations of the petition, and bases their refusal upon the provisions of the acts of Congress relating to buildings and to subdivisions of lots, and the regulations made in accordance therewith.

(2) They admit that so long as the adjacent lots remain unimproved, the proposed houses " may be safe and healthy for the inmates thereof," but aver that in their judgment, when the adjacent lots are improved, the buildings proposed by relator " may become unhealthy and the public health and safety thereby become endangered."

And they further say that " while they admit that the health of the inmates will be substantially provided for, so far as said houses themselves are concerned, and so long as the adjacent land remains unimproved, they say that, in their opinion, when the adjacent property is improved, as they aver it is likely to be, the relator's houses, in combination with such adjacent improvements, are likely to produce a situation injurious to the public health and safety."

They also admit " that the exact depth of fifty feet for each lot is not essential under all circumstances to the public health and safety, but aver that some limitation of the depth of lots upon which buildings may be erected is essential to such health and safety; and that in the exercise of their best discretion, which they are advised has been committed to them by the law, they determined that fifty feet is the smallest depth that should be permitted for such purposes."

(3) They further allege that if the buildings be permitted, it will be possible for owners of lots to form irregular combinations, facing in different directions, thus requiring undue extension of water and sewer service, etc.    A sketch is attached showing a possible combination of buildings of irregular size, limiting the air and light in rear of each house to the space left by the particular owner.    It is not claimed, however, that the buildings proposed by the relator will require any undue extension of water and sewer service, etc.

(4) The relator moved the grant of the peremptory writ, notwithstanding the answer to the rule, and the same was sustained and final judgment entered. [From that judgment the respondents appealed.— REPORTER.]

*Mr. Andrew B. Duvall*, attorney for the District of Columbia, and *Mr. Clarence A. Brandenburg*, assistant attorney, for the appellants:

1. The regulations in question are within the exercise of the police power; they regulate for public purposes the proper use of land in connection with buildings to be erected thereon, and the land of others upon which buildings may be erected. Prentice Police Powers, 236; *Powell* v. *Pennsylvania*, 127 U. S. 678; *Thorpe* v. *Rutland & B. RR.*, 27 Vt. 140; *Com.* v. *Alger*, 7 Cush. 84; *Mayor, etc., of N. Y.* v. *Miln*, 11 Pet. 139; *Hannibal, etc., RR. Co.* v. *Husen*, 95 U. S. 465; *Lake View* v. *Rose Hill Cemetery Co.*, 70 Ill. 192; *Munn* v. *Illinois*, 94 U. S. 124; *Bepley* v. *State*, 4 Ind. 264; *Goddard* v. *Jacksonville*, 15 Ill. 588; *Soon Hing* v. *Crowley*, 113 U. S. 703; *B. & P. RR. Co.* v. *Fifth Baptist Church*, 108 U. S. 317; *Mugler* v. *State of Kansas*, 123 U. S. 623; *Railroad Co.* v. *District of Columbia*, 10 App. D. C. 126.

2. The Commissioners had ample authority to make the regulations complained of. Act of Congress of June 14, 1878, 20 Stat. 131; Act of Congress of August 27, 1888, 25 Stat. 451; Joint Resolution of Congress of February 26, 1892, 27 Stat. 394. The building regulations have been held to have the same effect as if enacted by Congress. *United States* v. *Cole*, 18 D. C. 504; *Halpine* v. *Barr*, 21 D. C. 331. The mere authority to make "building regulations" relates not alone to the materials of which the structure is to be erected. *United States ex rel. Strasburger* v. *Commissioners*, 5 Mack. 389. It is an established principle in this country that so long as the legislature does not pass the limits fixed by the Constitution, the courts have no

authority to interfere on the ground that the legislative acts in question violate the natural principles of justice and right. Tiedeman's Lim. Police Power, Sec. 2. A " building. regulation " is not void because it may be considered unreasonable. It has been repeatedly held that an act of Congress is not unconstitutional and void merely because it is unreasonable; and if that be true an ordinance promulgated by the Commissioners, which Congress declares shall have the force and effect as if enacted by Congress, should not be held void even if it be unreasonable. This test of the validity of a municipal regulation cannot be applied when the power to legislate on the subject has been expressly conferred. *District of Columbia* v. *Waggaman,* 4 Mackey, 335.

3. The regulations complained of are not arbitrary requirements; they are bona-fide efforts to conserve the public health and to protect the rights of the public. *Commonwealth* v. *Tewksbury,* 11 Metc. 55; *Taylor* v. *State,* 35 Wis. 298; *Blydenburgh* v. *Miles,* 39 Conn. 484; *Watertown* v. *Mayo,* 109 Mass. 315.

4. The regulations are not void because of uncertainty. It was claimed by appellee that, under the authority of *United States* v. *Cole,* 18 D. C. 516, the regulations respecting the subdivision of lots were void, because of the " exceptions " contained therein. But we submit that the requirements of the regulations are severable; that part relating to the appellee's lot is unobjectionable, and it is therefore enforceable. The rule is settled that in a statute which contains invalid or unconstitutional provisions, if the valid and invalid are capable of separation, only the latter are to be disregarded. *Albany Co.* v. *Stanley,* 105 U. S. 305; *Keokuk P. Co.* v. *Keokuk,* 95 U. S. 80; *Pressner* v. *Illinois,* 116 U. S. 252.

5. The writ of mandamus does not lie in such a case as this against the appellants. The duty of the Commissioners and the inspector of buildings in such a case as the one at

bar is not a mere ministerial duty; it necessarily involves the construction of statutes and the exercise of judgment. *Messenger Co.* v. *Wright,* 15 App. D. C. 468.

*Mr. B. F. Leighton* for the appellee:

1. The Commissioners have no power to issue building regulations except such as is derived from the act of Congress which authorized the Commissioners of the District of Columbia to make such building regulations for said District as they might deem advisable. 1st Supp. R. S. U. S., p. 352. While the language of the act is broad and general in its terms, and confers upon the Commissioners ample authority to promulgate and enforce building regulations, the act does not confer upon them any authority to promulgate a regulation which does not legitimately and properly fall within the designation of a building regulation. To regulate the construction of a building is to prescribe the mode of its construction; of what it shall be built; the character of the material, thickness and strength of the walls, the adjustment and proper connection of the sewer and water pipes, and possibly, the size and ventilation of the rooms. It has nothing to do with the subdividing of the land upon which the building is to be erected, and even the power to make such regulations is limited by the rule that a building regulation to be valid must be reasonable. This principle of reasonableness must be applied to the application of the act of Congress, and the statute interpreted by its light.

The doctrine of reasonableness as applied to a building regulation is a proper test of its validity. *Milliken* v. *City Council,* 54 Tex. 394; *Borling* v. *West et al.,* 29 Wis. 315; *Yates* v. *Milwaukee,* 10 Wall. 504; *Buffalo* v. *Webster,* 10 Wend. 99 (Lawyer's Co-op. Ed.); *Dunham & Daniels* v. *Trustees of the Village of Rochester,* 5 Cow. 465; *Tugman* v. *City of Chicago,* 78 Ill. 405. That portion of section 34 of the building regulations which directs that blocks of two or more dwelling-houses shall not be erected until the land upon which they are to be erected has been subdivided, so

that each house shall have a separate lot, unless a special permit be granted in each case by the Commissioners, makes by necessary implication, the orders promulgated by the Commissioners under the act to regulate subdivisions of land within the District of Columbia, a part of the building regulations themselves, as much as though incorporated therein. Such provision has no relation to the subject of building, is not within the meaning or purpose of the act empowering the Commissioners to make building regulations, is *ultra vires,* and for that reason void. It is not properly a regulation at all. The Commissioners have reserved expressly the right to grant a special permit in violation of the requirement if they see fit. It seems to imply that each case is to be considered by the Commissioners by itself, and a permit granted or withheld, at their pleasure. The statute gives them no such power. *United States* v. *Cole,* 18 D. C. 516.

2. The value of property consists in the uses to which it can be put. Take away all uses to which property may be devoted, and you destroy the value of the property as effectually as though the property itself was made non-existent. The highest use to which property can be devoted is that of the home. A dwelling-house used as a place of residence cannot be, under any circumstances, injurious to property in its vicinity, or the subject of abatement as a nuisance. A building for such a purpose may be erected next door to a saloon, a theater, a soap factory, or a limekiln, in the heart of the business portion of the city or town, and no question could be raised as to the legality of such structure because of the use to which it was to be put. Such places might readily become injurious to the home, and hence, in the interests of the home, ordinances are found in many cities restraining, except under certain conditions, the use of property for the purposes indicated and other kindred objects; but no municipal ordinance can be found which prohibits the erection of a building for a home, on the ground that it is injurious to the community in which it is to be erected. No such restriction of the use of property as is sought to be here imposed, can be found anywhere in the books. The Commissioners admit, in their return, that the houses if

36

erected as planned, will be commodious, sanitary and suitable for human habitation. One of the grounds of their refusal to grant the permit is based upon the alleged fear that at some future time, it may be possible, if these dwellings are surrounded by other dwellings, they may become unsanitary. It will be time enough to deal with the future condition of the houses when that future shall arrive. It would hardly do to deprive a citizen of the legitimate use of his property, in fear of the fulfillment of a prophecy which may never come to pass. See *Austin* v. *Murray,* 16 Pick. 126; *Hayes* v. *Appleton,* 24 Wis. 542; *Hayden* v. *Noyes,* 5 Conn. 391; *Milliken* v. *City Council,* 54 Tex. 394; *Dunham* v. *Trustees, etc.,* 5 Cow. 459; *Staley* v. *Mott,* 61 Md. 303; Tiedeman, Limitation of Police Powers, Sec. 122 E.; *Wadleigh* v. *Gilman,* 12 Me. 406; *Vanderbilt* v. *Adams,* 5 Cow. 351.

Mr. Justice SHEPARD delivered the opinion of the Court:

In the exercise of its ordinary legislative power over the District of Columbia, Congress, on June 14, 1878, authorized and directed the Commissioners to make and enforce such building regulations as they may deem advisable, and declared that the same should have the same force and effect as if enacted by Congress. 20 Stat. 131.

The latest regulations under this authority were promulgated on July 31, 1897, and contain many necessary and useful requirements looking to the safety, health, etc., of the occupants of the buildings and of the general public.

Among these is included the one heretofore set out which limits the depth of lots, upon which dwellings may be erected, to not less than fifty feet. The only limitation upon the size of a dwelling to be erected upon any lot is that it shall be not less than sixteen feet wide, and that it shall have certain open space in its rear for light and air. The houses which relator proposes to erect are of the prescribed width, and as they extend back but thirty-six feet, a sufficient open space is left to comply with the regulations.

The single question involved in this case, therefore, is the validity of the particular item of the regulations by virtue

of which the relator has been denied permission to build his houses as proposed, because his lots have not the required depth of fifty feet.

The discussion of this question at the bar has taken a wide range in respect of the powers of the municipal authorities in the matter of regulating and supervising the erection of buildings by private owners, which we do not deem it necessary to follow, as the ground upon which our conclusion rests is embraced within much narrower limits. In our opinion this particular requirement cannot properly be considered a building regulation within the powers conferred by Congress to that end in the act before referred to.

It does not relate to the height, depth, material, or manner of construction of the building itself; nor does it have any relation to leaving open necessary air spaces at the rear of buildings, or to the erection of dwellings fronting upon such air spaces, or alleys only; these are otherwise provided for. That owners of squares and parts of squares may possibly redivide or subdivide the same into lots of irregular depths, so that a later building upon one might shut off outer surface communication with the air space reserved in the rear of an adjacent house, and thereby possibly affect the public health or safety in some remote degree, does not seem to us a reasonable ground for bringing a rule for its prevention within the scope of a building regulation.

Moreover the same result might be achieved even if none of the lots were to be made of less depth than fifty feet.

To provide, in some measure, for such contingencies, Congress has legislated respecting the subdivision of lands and lots and the records of the plats thereof. By act of August 27, 1888, the Commissioners were " authorized and directed to make and publish such general orders as may be necessary to regulate the platting and subdividing of all lands and grounds in the District of Columbia," and further provided that no such plat or subdivision shall be admitted to record in the office of the Surveyor, without an order from the Commissioners. Other provisions look to the dedication of avenues, streets and alleys, and the conformity, in all cases

outside the city limits, with the general plan of the city of Washington. 25 Stat. 451.

In obedience to this act, the Commissioners promulgated regulations concerning the subject-matter, among which is to be found section 6, heretofore referred to, requiring all lots of the subdivision to be not less than sixteen feet wide and fifty feet deep, to admit the plat to record. No penalty is provided for failure to obey the regulations beyond the denial of record.

In a case heretofore decided, where a party sought to compel the Commissioners to admit a plat to record that was not in compliance with the requirements of the regulations, it was said that: " Each owner has the undoubted, right to lay off his land in any manner that he pleases, or not to subdivide it at all. * .* * But he has no corresponding right to have his plat of subdivision admitted to the records." *Ross* v. *United States ex rel. Goodfellow,* 7 App. D. C. 1, 10.

In accordance with that decision, the Commissioners were justified in refusing to admit the relator's plat of his subdivision to record, and the judgment appealed from does not compel them to do so. But the refusal of permission to the relator to build upon his lots as proposed is the denial of a right of property. It is admitted that his proposed buildings conformed in respect of materials, safety and healthfulness to the building regulations proper, and that permission would have issued as a matter of course had the lots been of the depth of fifty feet. As that regulation is not within the power conferred to make building regulations, and cannot constitute a defense under the act regulating the subdivision of lots, it is the plain duty of the Commissioners to issue the permit upon the payment of the lawful fees which the relator is ready and willing to do. The act required of them being a purely ministerial one, can be enforced by the writ of *mandamus. Roberts, Treasurer,* v. *United States ex rel. Valentine,* 13 App. D. C. 38, 46.; s. c., 176 U. S. 221, 231.

It follows that there is no error in the judgment and it will be affirmed. It is so ordered. *Affirmed.*