ROBERTS, Treasurer, *v.* UNITED STATES.

CERTIORARI TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 86. Argued December 15, 18, 1899. — Decided February 5, 1900.

A judgment of the Court of Claims, under the act of June 16, 1880, c. 243, in favor of the claimant, against the District of Columbia, upon a certificate of the board of audit of the District, in an action commenced in 1880, is not affected by the provision in the act of July 5, 1884, c. 227, forbidding the payment of such certificates, not presented for payment within one year from the date of the passage of the latter act.

The evident purpose of the act of August 13, 1894, c. 279, was to give the balance of interest upon the certificates between 3.65 and 6 per cent to the original holders of the certificates, or their assignees, the interest upon which had been paid only at the former rate.

The right of the relator as assignee having been admitted, it is no longer open to inquiry.

If a public officer of the United States refuses to perform a mere ministerial duty, imposed upon him by law, mandamus will lie to compel him to do his duty.

In this case, as the duty of the Treasurer of the United States to pay the money in question was ministerial in its nature, and should have been performed by him on demand; mandamus was the proper remedy for failure to do so.

THE case is stated in the opinion.

*Mr. Robert A. Howard* for Roberts. *Mr. Solicitor General* was on his brief.

*Mr. B. E. Valentine* for the United States.

Mr. Justice Peckham delivered the opinion of the court.

A writ of certiorari was issued in this case to the Court of Appeals of the District of Columbia, for the purpose of reviewing a judgment of that court affirming a judgment of the Supreme Court of the District, which awarded to the relator, Marie A. Valentine, a writ of mandamus to compel the petitioner, who is the Treasurer of the United States, to pay her, as assignee, a residue of 2.35 per cent interest upon certain certificates issued by the board of audit of the District of Columbia pursuant to the provisions of section 6 of the act approved June 20, 1874, entitled "An act for the government of the District of Columbia, and for other purposes." 18 Stat. 116, 118, c. 337.

The facts upon which the controversy arises are uncontradicted, and are as follows: One Charles E. Evans who, previous to 1874, had done a large amount of work for the District in laying concrete and brick pavements in the city of Washington, duly presented his claims on that account to the board of audit constituted under the act above mentioned, which board, after an examination of such claims, executed, on the first of August, 1874, the two certificates which form the basis of the claim of the relator, each certificate being dated on that day, one of which acknowledged an indebtedness to him on the part of the District of Columbia of $19,616.25 and the other $909.40. They were not, however, delivered to Evans, because at the time they were made a claim had been set up by the authorities of the District that Evans was liable for the expense of repairs which were needed on pavements laid by him, (which claim, however, as it afterwards appeared, was not well founded,) and the board of audit, instead of delivering the certificates to Evans, withheld them from him, and at or about their date delivered them to the Commissioners of the District, who held them as collateral security for the payment of any liability of Evans for the repairs mentioned. They remained from August, 1874, until June 9, 1890, in a

tin box in the office of the Treasurer of the United States, who held it and its contents subject to the control of the Commissioners of the District.

By reason of this refusal to deliver the certificates and their retention in the hands of the Treasurer, Evans was unable to avail himself of the right given by the act of 1874 to exchange such certificates for the 3.65 bonds mentioned in that act, and for the same reason he was unable to avail himself of the provisions of section 9 of the act approved June 16, 1880, 21 Stat. 284, c. 243, providing for the redemption of the certificates created by the act of 1874. An action was therefore commenced in December, 1880, in the Court of Claims by the assignee of Evans to recover judgment against the District of Columbia upon those certificates, under the provisions of section 1 of the above act of 1880. In this action, in addition to the claims upon the certificates already mentioned, Fisher, the assignee, included a large amount of other claims against the District, which had also been assigned to him by Evans.

In 1884, Congress passed an act, approved July 5, 1884, c. 227, 23 Stat. 123, 131, providing that no payment should be made of any certificate issued under the act of 1874 that should not be presented for payment within one year from the date of the approval of the act of 1884.

After its commencement, (the certificates still remaining in the custody of the Treasurer,) the action above mentioned continued pending until some time during the December term, 1889, of the Court of Claims, when the executors of the will of Fisher, the assignee, were substituted as parties plaintiff in the action upon the suggestion of the death of Fisher having been duly made upon the record, and the action was revived in the names of the executors of Fisher's will.

In June, 1890, a settlement of that action was agreed upon, by the terms of which the two certificates were to be delivered to the plaintiffs, and the other matters in dispute therein were to be withdrawn from the court by the discontinuance of the action. Pursuant to that settlement and on June 9, 1890, under the advice of the Assistant Attorney General in charge of the case, the certificates were delivered to the plaintiff's

attorney, who thereupon presented them to the Treasurer and requested him, in his capacity as *ex officio* commissioner of the sinking fund of the District of Columbia, to issue in exchange for them the 3.65 bonds authorized by the act of Congress of 1874. The Treasurer refused to redeem the certificates or to issue bonds for the payment thereof, or in any way to pay the same, until the parties had obtained a judgment in the Court of Claims in the action already mentioned, which should provide for their payment. Accordingly the plaintiffs in that action asked and obtained leave to amend their petition by striking out all reference to any other causes of action than those upon these two certificates. The amendment was consented to by the Assistant Attorney General, and on June 12, 1890, a judgment was duly obtained in favor of plaintiffs and against the District of Columbia for the recovery, "in the manner provided by the act of June 16, 1880, chapter 243," of the sums mentioned in the certificates. The judgment roll in the case contained the petition in which these particular certificates were set out in full, and it showed that the judgment entered by the Court of Claims was recovered on those certificates and on them alone. There was thus evidence on record which showed the cause of action on which the judgment was based. On September 12, 1890, the Treasurer paid these certificates with interest from their date, August 1, 1874, to September 11, 1890, at 3.65 per centum, by paying the judgment entered by the Court of Claims. Subsequently to that time the executors of Fisher, the assignee of Evans, assigned to one Robinson all interest in the claims and demands against the District, and Robinson subsequently assigned the same to the relator. Thus some sixteen years after the certificates had been duly made under the authority of the act of 1874 they were finally redeemed, the delay having been caused by their retention as above stated and by the refusal of the Treasurer to deliver them to their owner.

On August 13, 1894, Congress passed an act, 28 Stat. 277, c. 279, the first section of which reads as follows:

"That the Treasurer of the United States is hereby directed to pay to the owners, holders or assignees of all board of audit

certificates redeemed by him under the act approved June 16, 1880, the residue of two and thirty-five hundredths per cent per annum of unpaid legal rate interest due upon said certificates from their date up to the date of approval of said act providing for their redemption."

The relator as assignee, by her attorney, made demand upon the Treasurer for the payment of the balance of the interest as provided-for in the above act, and on November 3, 1897, the Treasurer refused such demand, and wrote the following letter to the attorney:

"Sir: Your letter of the 27th ultimo, enclosing a petition for the payment of interest on certain board of audit certificates, under the act of Congress approved August 13, 1894, is received.

"You will note that the act referred to provides for additional interest to be paid only upon board of audit certificates redeemed by the Treasurer under the act of June 16, 1880. Neither of the certificates recited in your petition was redeemed by the Treasurer, and they are not in his possession.

"You state that certain judgments of the Court of Claims were issued in lieu of these certificates. These judgments were paid by this office in the manner prescribed by law, but neither of them states that they were issued in lieu of or upon debts of the District of Columbia represented by board of audit certificates.

"The Treasurer has therefore no authority to pay the additional interest you demand."

The foregoing facts were set forth in the petition of the relator to the Supreme Court of the District of Columbia asking for a mandamus to compel the Treasurer to make the payment demanded.

In answer to the petition the Treasurer alleged "that the certain board of audit certificates, so called, in the said petition mentioned, namely, the certificates numbered 8879 and 19,429, were not redeemed by him or any person holding the office of

Treasurer of the United States at any time, and that the only moneys paid by any Treasurer of the United States on account of any of the matters or things in the said petition mentioned as having relation to the said certificates, or either of them, were paid upon certain judgments of the Court of Claims of the United States, as appears by the transcript from the records of the Treasury Department of the United States, hereto annexed and made part hereof, and that the defendant has no official knowledge, nor has he any official record in his office, showing or tending to show upon what claim or claims either of the said judgments was based."

Nothing but a transcript of the decree contained in the judgment roll was annexed to the return. The relator demurred to the return, and upon these pleadings the cause came on for hearing before the Supreme Court, which ordered a writ of mandamus to issue as prayed for. Upon appeal to the Court of Appeals that court affirmed the judgment, and the Treasurer applied for and obtained a writ of certiorari for the purpose of procuring a review of the judgment by this court.

Upon reading the return made by the Treasurer to the petition for the writ it will be seen that the facts upon which he bases his defence are that he did not redeem the certificates in question, and that the only moneys paid by any Treasurer of the United States were paid on this judgment of the Court of Claims already mentioned, and that it did not appear in any official record in his office upon what claim or claims the judgment of the Court of Claims was based.

The first question which arises, therefore, on this record is whether the Treasurer did redeem these certificates within the meaning of the act of 1894. The act of 1884 did not prohibit their redemption, for they were in suit under the provisions of section 1 of the act of 1880, long before the passage of the act of 1884, and provision was made in the act of 1880 for the payments of the judgments rendered by the Court of Claims upon presentation to the Secretary of the Treasury of a certified copy of such judgments. That they might be founded upon certificates was immaterial, for it

cannot be supposed that Congress by the act of 1884 meant to prohibit the payment of certificates which were in suit under the act of 1880, and upon which judgment might thereafter be rendered by the Court of Claims. Full effect can be given to the act of 1884 by confining it to the prohibition of payment of certificates which might, after the year, be presented in that form for payment, leaving the provisions for payment on suit brought under the act of 1880 in full force.

Taking this case as made by the record, we find that it is not disputed that the certificates were issued under the act of 1874, duly signed by the board of audit therein provided for, and delivered (without the consent of Evans) to the authorities of the District upon their unfounded claim that they were entitled to their possession as collateral security as already stated. It is not disputed that an action was commenced in the Court of Claims under the act of 1880 to recover against the District of Columbia upon the certificates, as well as upon other claims against the District. It is not disputed that upon a compromise made, all other causes of action were stricken from the petition, that the petition as amended contained a full description of the certificates, and an allegation that they were issued by the board of audit under the act of 1874, and that judgment was recovered upon such certificates, and upon them only, and for their payment pursuant to the act of 1874, and that pursuant to that judgment the Treasurer paid the amount thereof, together with interest on the certificates from the date of their issue in 1874 to September 11, 1890, the day before their payment.

Upon these facts we have no doubt that the certificates were redeemed within the meaning of the act of 1894. At the time of the judgment in the Court of Claims they were in the hands of the plaintiff in the action mentioned and were valid instruments in his hands, and his sole cause of action was based upon them, and the judgment entered by the Court of Claims necessarily declared their validity and the right of plaintiff to have the same paid as stated in the judgment. When the Treasurer subsequently paid that judgment, did he not therein and thereby redeem these certificates? If the certificates

themselves had been presented to the Treasurer and he had paid them, they would then, of course, have been redeemed. Were they any the less redeemed because an action had been brought upon them and the court had declared their validity and directed their payment, by a judgment duly entered to that effect, which judgment was subsequently paid by the Treasurer? Such payment, it seems to us, was a redemption of the certificates within the meaning of the act.

The evident purpose of the act of 1894 was to give the balance of interest between 3.65 and 6 per cent to those persons, or their assignees, to whom certificates had been given and the interest upon which had been paid only at the former rate. In all such cases where the certificates had been redeemed by the Treasurer, the additional interest was to be paid, and we cannot doubt that under this act the certificates were redeemed when paid by the Treasurer by virtue of the judgment which had been recovered on them and which was directed to be paid pursuant to the act of 1874. The act of 1894 did not limit the payment to those who had succeeded in exchanging their certificates for bonds bearing interest at the rate of 3.65 per cent. It was through no fault of the holders of these particular certificates that they had not been exchanged for such bonds, but the exchange had not been effected because the authorities of the District improperly retained custody of them, and refused to deliver them to their rightful owner.

The act of 1894 plainly relates to and speaks of the certificates which had been redeemed under the act of 1880, and these certificates had been so redeemed.

The further objection made by the Treasurer, that he had in his office no official record showing or tending to show upon what claim or claims the judgment of the Court of Claims was based, is, under the admitted facts in this case, wholly immaterial.

The judgment roll in the action is of record in the Court of Claims, and that roll showed precisely and in detail that the judgment was recovered upon those specific certificates, and upon nothing else, and when the Treasurer pays such judgment there is thus record evidence that he has paid the certificates

mentioned in the judgment roll, upon which certificates the judgment itself was recovered.

This is all the defence upon the facts that is made to the issuing of the writ so far as appears by the return made by the Treasurer to the application for mandamus, but upon the argument in this court the further objection was taken that the relator was not such an assignee as was within the contemplation of the act of 1894, because, as was stated, she was not such assignee at the time of the payment of the certificates made by the Treasurer.

It is somewhat late to raise this defence, but we think there is nothing in the objection. These certificates had been paid at the rate of interest of 3.65 only, and the act of 1894 intended to give to those people who were their original owners, or who had become assignees of such owners, although subsequent to the payment of the certificates, the right to recover this additional interest. But if the act were construed as intending to provide for the payment of interest to those persons who were the owners of the certificates at the time when they were redeemed, it could not with any force be argued that such persons might not assign their claim to the balance of the interest provided for in the act of 1894 after the passage of that act. Hence if the defendant had set up in his return any such objection, it might have been obviated by proof that the owners of the certificates when redeemed had after the passage of the act of 1894 assigned their right to the interest mentioned therein to the relator. The Treasurer made no such objection to payment, either in his letter to the attorney for the relator before this proceeding was commenced, or in his return herein. The right of relator, as assignee, has been admitted, and the Treasurer placed his objections on grounds altogether different.

The remaining and most important objection is that this is not a case in which the writ of mandamus can properly be issued to one of the executive officers of the government.

The law relating to mandamus against a public officer is well settled in the abstract, the only doubt which arises being whether the facts regarding any particular case bring it within

the law which permits the writ to issue where a mere ministerial duty is imposed upon an executive officer, which duty he is bound to perform without any further question. If he refuse under such circumstances, mandamus will lie to compel him to perform his duty. This is the principle upheld by this court in *United States* v. *Black*, 128 U. S. 40, and upon the authority of that case the defendant claims that no mandamus can be issued against him.

The writ was refused in the *Black case*, because, as the court held, the decision which was demanded from the Commissioner of Pensions required of him, in the performance of his regular duties as commissioner, the examination of several acts of Congress, their construction and the effect which the latter acts had upon the former, all of which required the exercise of judgment to such an extent as to take his decision out of the category of a mere ministerial act. A decision upon such facts, the court said, would not be controlled by mandamus. The circumstances under which a party has the right to the writ are examined in the course of the opinion, which was delivered by Mr. Justice Bradley, and many cases upon the subject are therein cited, and the result of the examination was as just stated.

In this case the facts are quite different. There is but one act of Congress to be examined, and it is specially directed to the Treasurer. We think its construction is quite plain and unmistakable. It directs the Treasurer to pay the interest on the certificates which had been redeemed by him, and the only question for him to determine was whether these certificates had been redeemed within that meaning of that act. That they were, we have already attempted to show, and the duty of the Treasurer seems to us to be at once plain, imperative, and entirely ministerial, and he should have paid the interest as directed in the statute.

This case comes within the exception stated in the *Black case*, that where a special statute imposes a mere ministerial duty upon an executive officer, which he neglects or refuses to perform, then mandamus lies to compel its performance; but the court will not interfere with the executive officers of

the Government in the exercise of their ordinary official duties, even when those duties require an interpretation of the law, the court having no appellate power for that purpose. On this last ground the court denied the writ.

Unless the writ of mandamus is to become practically valueless, and is to be refused even where a public officer is commanded to do a particular act by virtue of a particular statute, this writ should be granted. Every statute to some extent requires construction by the public officer whose duties may be defined therein. Such officer must read the law, and he must therefore, in a certain sense, construe it, in order to form a judgment from its language what duty he is directed by the statute to perform. But that does not necessarily and in all cases make the duty of the officer anything other than a purely ministerial one. If the law direct him to perform an act in regard to which no discretion is committed to him, and which, upon the facts existing, he is bound to perform, then that act is ministerial, although depending upon a statute which requires, in some degree, a construction of its language by the officer. Unless this be so, the value of this writ is very greatly impaired. Every executive officer whose duty is plainly devolved upon him by statute might refuse to perform it, and when his refusal is brought before the court he might successfully plead that the performance of the duty involved the construction of a statute by him, and therefore it was not ministerial, and the court would on that account be powerless to give relief. Such a limitation of the powers of the court, we think, would be most unfortunate, as it would relieve from judicial supervision all executive officers in the performance of their duties, whenever they should plead that the duty required of them arose upon the construction of a statute, no matter how plain its language, nor how plainly they violated their duty in refusing to perform the act required.

In this case we think the proper construction of the statute was clear, and the duty of the Treasurer to pay the money to the relator was ministerial in its nature, and should have been performed by him upon demand. The judgment of the Court of Appeals must be

*Affirmed.*