WORK, SECRETARY OF THE INTERIOR, JOHNSON, GOVERNOR OF THE CHICKASAW NATION, ET AL. *v.* UNITED STATES EX REL. McALESTER-EDWARDS COMPANY.

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 258.   Argued April 12, 1923.—Decided May 21, 1923.

1. The Act of February 8, 1918, c. 12, 40 Stat. 433, was enacted for the chief purpose of selling, after appraisal, the coal and asphalt deposits in segregated mineral land of the Choctaws and Chickasaws, subject to existing leases, and not for the appraisal and disposition of the surface, this having been provided for by the Act of February 19, 1912, c. 46, 37 Stat. 67.   P. 206.

2. Section 4 of the Act of February 8, 1918, *supra*, in providing that any lessee shall have the preferential right, upon certain conditions, to purchase " at the appraised value " any and all of the surface lying within his lease and heretofore reserved by order of the Secretary of the Interior, does not contemplate a new appraisement of the surface but refers to the value as previously ascertained by appraisement under the Act of February 19, 1912, *supra*.   P. 207.

3. The lessee's right in such case is given by the Act of 1918 without qualification, and is not left to the legal discretion of the Secretary of the Interior in the construction of the act.   P. 208.

4. Therefore, a lessee having this preferential right and having elected to purchase and made due and timely tender of the value, as appraised under the Act of 1912, has a right to a mandamus against the Secretary of the Interior, the Governor of the Chickasaw Nation and the Principal Chief of the Choctaw Nation, to compel acceptance of the tender and issuance of an appropriate patent, as directed by § 7 of the Act of 1918.  P. 208.

51 App. D. C. 171; 277 Fed. 573, affirmed.

' The relator, the McAlester-Edwards Coal Company, filed a petition in the Supreme Court of the District of Columbia, asking for a writ of mandamus to require the Secretary of the Interior and the Governor of the Chickasaw Nation and the Principal Chief of the Choctaw Nation to accept $10,360.06, the balance of the purchase price of $12,651.82 ($2,291.76 having already been tendered and accepted) tendered by the Coal Company in payment for certain surface lands to which under the Act of Congress of February 8, 1918, c. 12, § 4, 40 Stat. 433, it claimed a preferential right of purchase, and to require the Governor of the Chickasaw Nation and the Principal Chief of the Choctaw Nation to issue a patent to the Coal Company for the same and the Secretary of the Interior to approve it.

The answer of the defendants below admitted all the material facts alleged in the petition, but denied the right of the Coal Company to the mandamus on the ground that the construction put upon the Act of 1918 by the Secretary of the Interior, in the exercise of the discretion vested in him by the statute, did not give to the relator, the Coal Company, the preferential right asserted.  The Supreme Court of the District overruled a demurrer to the answer, and the relator not pleading further, the petition was dismissed.  On review in the Court of Appeals, the judgment of the District Supreme Court was reversed on the ground that the demurrer should have been sustained and the writ asked for should have issued.  The cause was remanded to have the writ issue.

The Coal Company is owner by assignment of a lease approved by the Secretary of the Interior of coal lands in Pittsburg County, Oklahoma, belonging to the Choctaw and Chickasaw Nations, executed in July, 1899, and running for 30 years. This lease permitted the lessee to use the surface of the land covered by the lease for the purpose of developing its coal mine. The Act of February 19, 1912, c. 46, 37 Stat. 67, authorized the Secretary of the Interior to sell the surface leased and unleased of the segregated mineral land of the Choctaws and Chickasaws, reserved under previous laws, to include the entire estate of the Indians therein except the coal and asphalt reserved. The Secretary was required in the first section, quoted in the margin,[1] to classify and have appraised the

---

[1] That the Secretary of the Interior is hereby authorized to sell at not less than the appraised price, to be fixed as hereinafter provided, the surface, leased and unleased, of the lands of the Choctaw and Chickasaw Nations in Oklahoma segregated and reserved by order of the Secretary of the Interior dated March twenty-fourth, nineteen hundred and three, authorized by the Act approved July first, nineteen hundred and two. The surface herein referred to shall include entire estate save the coal and asphalt reserved. Before offering such surface for sale the Secretary of the Interior, under such regulations as he may prescribe, shall cause the same to be classified and appraised by three appraisers, to be appointed by the President, at a compensation to be fixed by him, not to exceed for salary and expenses for each appraiser the sum of fifteen dollars per day for time actually engaged in making such classification and appraisement. The classification and appraisement of the surface shall be by tracts, according to the Government survey of said lands, except that lands which are especially valuable by reason of proximity to towns or cities may, in the discretion of the Secretary of the Interior, be subdivided into lots or tracts containing not less than one acre. In appraising said surface the value of any improvements thereon belonging to the Choctaw and Chickasaw Nations, except such improvements as have been placed on coal or asphalt lands leased for mining purposes, shall be taken into consideration. The surface shall be classified as agricultural, grazing, or as suitable for town lots. The classification and appraisement provided for herein shall

surface so to be sold. The second section, also quoted in the margin,[2] gave a preferential right for sixty days to any coal or asphalt lessee to purchase at the appraised value, the surface of the land covered by his mining lease, not exceeding five per cent. of the whole surface, which the Secretary might extend to ten per cent., upon waiver of right by the lessee to use any more of the surface, but

---

be completed within six months from the date of the passage of this Act, shall be sworn to by the appraisers, and shall become effective when approved by the Secretary of the Interior: *Provided,* That in the proceedings and deliberation of said appraisers in the process of said appraisement and in the approval thereof the Choctaw and Chickasaw Nations may present for consideration facts, figures, and arguments bearing upon the value of said property.

[2] Sec. 2. That after such classification and appraisement has been made each holder of a coal or asphalt lease shall have a right for sixty days, after notice in writing, to purchase, at the appraised value and upon the terms and conditions hereinafter prescribed, a sufficient amount of the surface of the land covered by his lease to embrace improvements actually used in present mining operations or necessary for future operations up to five per centum of such surface, the number, location, and extent of the tracts to be thus purchased to be approved by the Secretary of the Interior: *Provided,* That the Secretary of the Interior may, in his discretion, enlarge the amount of land to be purchased by any such lessee to not more than ten per centum of such surface: *Provided further,* That such purchase shall be taken and held as a waiver by the purchaser of any and all rights to appropriate to his use any other part of the surface of such land, except for the purpose of future operations, prospecting, and for ingress and egress, as hereinafter reserved: *Provided further,* That if any lessee shall fail to apply to purchase under the provisions of this section within the time specified the Secretary of the Interior may, in his discretion, with the consent of the lessee, designate and reserve from sale such tract or tracts as he may deem proper and necessary to embrace improvements actually used in present mining operations, or necessary for future operations, under any existing lease, and dispose of the remaining portion of the surface within such lease free and clear of any claim by the lessee, except for the purposes of future operations, prospecting, and for ingress and egress, as hereinafter reserved.

allowed the Secretary in case of a lessee's failing to purchase to reserve to him as much of the surface as the Secretary might deem proper for his mining uses and development.

Pursuant to this act, the Secretary classified and appraised the surface of the land which included that covered by the lease of the Coal Company. The Coal Company, however, did not avail itself of the right to purchase but under the authority of the latter part of the section accepted a reservation by the Secretary of a certain part of the surface for its mining operations.

The purpose of the Act of February 8, 1918, 40 Stat. 433, already referred to, is shown by its title "An Act Providing for the sale of the coal and asphalt deposits in the segregated mineral land in the Choctaw and Chickasaw Nations, Oklahoma." Before offering the coal and asphalt deposits for sale, the Secretary was to cause them to be appraised, under such regulations as he should prescribe. All deposits sold were to be subject to the rights of existing lessees, and § 4 contained a provision that any lessee of mining rights should have the preferential right to buy them at the highest price offered for them at public auction—at not less than the appraisement—and that after the appraisement of the mining rights and within ninety days thereof such lessee should have the preferential right to buy the surface rights reserved to him by the Secretary as such lessee " at the appraised value."

The relator bought the mining rights and then within due time undertook to exercise its preferential right to buy the surface rights reserved to it by the Secretary under the Act of 1912, and made a payment on account of $2,291.76, on the basis of the appraisement under the Act of 1912, which was accepted by the Superintendent of the Five Civilized Tribes and approved by the Secretary of the Interior and retained for fourteen months. When this became known to the Choctaw and Chickasaw Na-

tions, their representatives protested and insisted that there must be a new appraisement under the Act of 1918. There was a hearing before the Secretary who reversed his first ruling and held that the relator was entitled to purchase such surface lands only under an appraisement made subsequently to the Act of 1918, and that the money paid under the appraisement of 1912 should be returned to the relator. An appraisement was then ordered by the Secretary under regulations issued by him, at which the price for the surface in respect to which the relator had sought to exercise a preferential right, was fixed at $20,482.60, instead of $9,050.53, which had been the appraisement under the Act of 1912.

*Mr. H. L. Underwood,* with whom Mr. *Solicitor General Beck* and *Mr. Assistant Attorney General Riter* were on the brief, for plaintiffs in error.

*Mr. G. G. McVay* and *Mr. E. O. Clark* filed a brief on behalf of the Chickasaw and Choctaw Nations, plaintiffs in error.

*Mr. George M. Porter* and *Mr. Conrad H. Syme,* with whom *Mr. John L. Fuller* and *Mr. James W. Beller* were on the brief, for defendant in error.

MR. CHIEF JUSTICE TAFT, after stating the case as above, delivered the opinion of the Court.

Two questions are to be decided in this case. The first is under what appraisement the preferential right conferred on the relator by the second section of the Act of 1918 to purchase the surface previously reserved to it by the Secretary of the Interior, was to be exercised. Should it have been under that of the Act of 1912, or under that ordered by the Secretary after the Act of 1918? The second question is whether the construction necessary to determine the first question is vested by the statute in

the legal discretion of the Secretary which it is not within the power of the Supreme Court of the District by mandamus to control.

First. We have no doubt that the appraisement referred to in the second section of the Act of 1918 under which the preferential right was to be exercised was that provided for in the Act of 1912. It will be observed that the Act of 1912 provided for the sale of the surface lands covering the coal and asphalt deposits of the Choctaws and Chickasaws, and elaborate provisions were made for the appraisement of them. A board of appraisers was to be appointed by the President of the United States, regulations were to be made by the Secretary for the appraisement, and minute requirements were set forth in the first section as to the different classes of such surface lands. More than that, six months' time was allowed for it and $50,000 was appropriated out of the treasury of the nations to complete the appraisement and sale. By the second section it was attempted to protect the lessees of the minerals in retaining enough surface land to enjoy their leases by giving them short time options to purchase certain percentages of the whole surface and if they did not purchase, by an agreed reservation without purchase of what the Secretary might deem necessary. The object of this legislation was the appraisement, offering, sale and disposition of the surface of the mineral land. The Act of 1918 was enacted not to sell the surface. That had been all disposed of except these agreed reservations by the Secretary specifically provided for in the Act of 1912. The later act was to sell outright the coal and asphalt deposits, much of which had been leased until 1929, subject to such leases. That was its chief purpose. Everything else was incidental. As part of this chief purpose, it provided elaborately for an appraisement of the mineral deposits, just as the Act of 1912 had provided for the appraisement of the surface

land. There is nothing in the Act of 1918 as to the appraisal of the reserved surface land except in the two words italicized in the following paragraph, taken from § 4:

"Any lessee shall have the preferential right, provided the same is exercised within ninety days after the approval of the completion of the appraisement of the minerals as herein provided, to purchase at *the appraised value* any or all of the surface of the lands lying within such lease held by him and heretofore reserved by order of the Secretary of the Interior."

This paragraph is in the middle of § 4, a section devoted to saving the rights of the lessees of the coal and asphalt deposits from impairment by the sale of such deposits contemplated by the act. It was entirely natural, as such reservation of the surface had been made to preserve the mining opportunities of the lessees under the Act of 1912, that now that it was hoped that the lessees would buy the leased deposits outright under the act, as we may judge from the provision giving them preferential rights to do so contained in the same section, provision should also be made to secure them permanent ownership of that which the Secretary had deemed necessary for their mining under the leases. These privileges extended to the lessees show clearly that this act is *in pari materia* with all the previous legislation concerning these mineral lands, both as to surface and deposits, and especially with the Act of 1912 as to the surface. This is confirmed by the proviso in § 4 that " nothing herein contained shall be construed as limiting or curtailing the rights of any lessee or owner of mineral deposits from acquiring additional surface lands for mining operations as provided by the Act of Congress of February 19, 1912."

There is nothing in the Act of 1918 expressly or impliedly authorizing the Secretary to order a reappraise-

ment of the surface land.   There is no appropriation for
the purpose.

If by the words quoted from § 4 of the act it was in-
tended to authorize a new appraisement of the surface
reservations, the language would not have been " *the* "
appraisement but " *an* " appraisement.   The use of the
definite article means an appraisement specifically pro-
vided for.   Such an appraisement of the minerals was
provided for in the Act of 1918 and this is mentioned in
the same sentence in which " *the* appraisement " of the
surface land is referred to.   Construing the Acts of 1912
and 1918 together, the appraisement can only refer to
that so elaborately provided for in 1912.

Second. We think that the preferential right of re-
lator conferred by § 4 of the Act of 1918 was not to be
left to the legal discretion of the Secretary in the con-
struction of that act.   There are no words to qualify that
which the lessee has as a right granted by the statute, or
to vest in the Secretary the final discretion to determine
or define that right.

Section 7 of the Act of 1918 provides that when the
full purchase price for any property sold hereunder is
paid, the chief executives of the two tribes shall execute
and deliver, with the approval of the Secretary of the In-
terior, to each purchaser an appropriate patent conveying
to the purchaser the property so sold.   This is language
of command, and brings the case within *Lane* v. *Hoglund,*
244 U. S. 174, and the many cases cited there, and in
which this Court quotes from its opinion in *Roberts* v.
*United States,* 176 U. S. 221, 231, as follows:

" Every statute to some extent requires construction by
the public officer whose duties may be defined therein.
Such officer must read the law, and he must therefore, in
a certain sense, construe it, in order to form a judgment
from its language what duty he is directed by the statute
to perform.   But that does not necessarily and in all cases

make the duty of the officer anything other than a purely ministerial one. If the law direct him to perform an act in regard to which no discretion is committed to him, and which, upon the facts existing, he is bound to perform, then that act is ministerial, although depending upon a statute which requires, in some degree, a construction of its language by the officer." See also *Work* v. *United States ex rel. Mosier,* 261 U. S. 352.

The decree of the Court of Appeals of the District of Columbia is

*Affirmed.*