## COLVIN v. FALL, Secretary of the Interior, et al.

(Court of Appeals of District of Columbia. Submitted October 12, 1923 Decided November 5, 1923.)

### No. 3945.

I. **Public lands** ⊘⊃106(2)—**Courts may review question of law decided by Interior Department.**

As far as it involves a question of law, courts have jurisdiction to review a decision of the Interior Department construing Act Dec. 28, 1876, authorizing the legal representatives of a named person to locate on any land in what was Missouri territory subject to sale.

⊘⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Public lands ⟨key⟩43—Scrip location held not within act authorizing location on land in what was Missouri territory.**

An entry located about 40 miles west of 100 degrees west longitude and south of the Arkansas river *held* not authorized by Act Dec. 28, 1876 (19 Stat. 500), authorizing a scrip location "on any land in what was Missouri territory subject to sale," in view of the treaty with France of 1803, Act March 26, 1804, Act June 4, 1812 (2 Stat. 743), treaty with Spain of February 22, 1819 (8 Stat. 252), and Act Sept. 9, 1850 (9 Stat. 446).

Appeal from the Supreme Court of the District of Columbia.

Suit by Ralph E. Colvin against Albert B. Fall, Secretary of the Interior, and William Spry, Commissioner of the General Land Office. From a decree dismissing the bill, complainant appeals. Affirmed.

Michael A. Mess, of Washington, D. C., for appellant.

C. Edward Wright, of Washington, D. C., for appellees.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of United States Court of Customs Appeals.

ROBB, Associate Justice. Appeal from a decree in the Supreme Court of the District, dismissing appellant's bill to restrain the enforcement of decisions of the Interior Department and directing a readjudication conformably to the contentions of appellant, respecting a scrip location which was locatable "on any land in what was Missouri territory subject to sale." The Act of February 17, 1815 (3 Stat. 211), provided that any person or persons owning land in the county of New Madrid, "in the Missouri territory, with the extent the said county had on the tenth day of November, eighteen hundred and twelve," whose lands had been materially injured by earthquakes, might "locate the like quantity of land on any of the public lands of the said territory, the sale of which is authorized by law."

Pursuant to this act, Samuel Ware, on April 25, 1823, made a location on Wolf Island, in the Mississippi river. However, the Supreme Court of the United States having decided in Missouri v. Kentucky, 11 Wall. 395, 20 L. Ed. 116 (December, 1870), that this island was a part of the state of Kentucky and not a part of Missouri, the Ware entry was canceled. Thereupon there was passed the Act of December 28, 1876 (19 Stat. 500), reciting that Ware was the owner of a land claim "located in the county of New Madrid, in the then territory of Missouri"; that this land had been injured by earthquakes; that Ware had availed himself of the provisions of the act of 1815, authorizing the location of "the like quantity of lands on any of the then territory the sale of which is authorized by law," by locating on Wolf Island, "upon the supposition that said island was in the state of Missouri"; and that the Supreme Court had ruled that the island belonged to the state of Kentucky. The act then provided that there should be issued "a certificate of new location to the legal representatives of Samuel Ware, authorizing them to locate said certificate on * * * any land in what was Missouri territory, subject to sale."

The entry here in question was made under the act of 1876, and the final decision of the department was that "this land could never have

───────────────

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

formed a part of even the entire area of the Missouri territory, because it is located about 40 miles west of the 100th parallel, west longitude, and south of the Arkansas river, and therefore a part of Mexico during all the time the Missouri territory was in existence, and did not completely pass to our government until after the state of Texas, as Mexico's successor in interest, ceded to the United States her claim to the area of which it forms a part, in 1850, for $10,000,000." In other words, the department ruled that this land was not "in what was Missouri territory."

[1, 2] That the courts are clothed with jurisdiction to review the decision of the Interior Department construing the act of 1876, in so far as it involves a question of law, we think clear from decisions of the Supreme Court of the United States. See Work et al. v. United States, 262 U. S. 200, 43 Sup. Ct. 580, 67 L. Ed. 949, Lane v. Hoglund, 244 U. S. 174, 37 Sup. Ct. 558, 61 L. Ed. 1066, and Roberts v. United States, 176 U. S. 221, 231, 20 Sup. Ct. 376, 44 L. Ed. 443. If, therefore, the land involved in this entry was in what was Missouri territory, the duty of the department, so far as this question was concerned, was purely ministerial. Had the department found that this land was in what was Missouri territory, it might have been called upon to determine questions involving the exercise of discretion, not reviewable by the courts. However, this phase of the case is not before us, so that we are remitted to a determination of the question whether this entry was in Missouri territory.

By the Treaty of 1803 (8 Stat. 200) the United States acquired from France what is known as the Louisiana Purchase, the western boundary of which was indefinite. Subsequently by the Act of March 26, 1804 (2 Stat. 283), Congress created out of this Purchase "the territory of Orleans," the western boundary of which was "to extend west to the western boundary of the said cession." The Act of June 4, 1812 (2 Stat. 743), changed the name of the territory of Orleans to "Missouri."

On February 22, 1819 (8 Stat. 252), there was concluded a treaty with Spain, under which there was ceded to the United States Spain's Florida possessions, and there was ceded and renounced to Spain all "rights, claims and pretensions" of the United States to territory west of a described line, which territory embraced the land here involved. It thus appears that the United States, in this treaty, definitely and formally relinquished its claim to this land, which thereupon became and was Spanish territory.

In 1845 Texas was annexed and became one of the states of the Union. By the Act of September 9, 1850 (9 Stat. 446), a proposal was made to Texas that she relinquish to the United States certain territory, including the land in question, and this proposal was accepted. The title of the United States to this land thus was derived from Texas. It now forms a part of the state of Kansas.

In the light of the foregoing, can it reasonably be said that Congress, in 1876, in authorizing the location of the Ware certificate on land in what was Missouri territory, intended to embrace as within that territory land which the United States formally and definitely renounced to Spain under the treaty of 1819? We think not. In view of what

had gone before, such an intent could not be attributed to Congress, unless expressed in clear and unambiguous terms. It is quite apparent that Congress was dealing with actual facts rather than with pretensions, for the language is "land in what was Missouri territory," and not "land in what was claimed to be Missouri territory." We are unable to say that land formally recognized as Spanish territory in 1819, and which never in fact became a part of Missouri territory, was regarded by Congress in 1876 as having been actually a part of that territory.

It results that the decree appealed from must be affirmed, with costs. Affirmed.