## HAZARD et al. v. BLESSING et al.

(Court of Appeals of District of Columbia. Submitted October 14, 1924. Decided December 1, 1924. Motion for Rehearing Denied December 20, 1924.)

No. 4082.

**1. Livery stable and garage keepers ☞4½— Consent required for construction of garage.**

Where land was designated as two squares separated by street under Act February 23, 1905, providing for designation of parcels of land formed by Highway Extension Act March 2, 1893, consent of owners of land in one square within 200 feet of proposed garage in another square will not be considered, in ascertaining whether consent has been obtained for construction of garage under regulations adopted pursuant to Act March 1, 1920, requiring written consent of owners of 75 per cent. of property within square and "other property within 200 feet of the proposed establishment, and not separated therefrom by a street," though the street between the two squares had been extended merely on paper.

**2. District of Columbia ☞2—Equity may compel commissioners to cancel permit for garage issued without jurisdiction.**

Commissioners of District of Columbia, having issued permit for construction of garage in residential district without written consent of owners, required by regulations adopted under Act March 1, 1920, could be compelled by equity to revoke permit; they having acted without jurisdiction, and not merely in exercise of discretion.

**3. District of Columbia ☞2—Board of commissioners has only powers expressly conferred by statute.**

Board of commissioners of District of Columbia is a creature of the statute, and its jurisdiction is limited to powers expressly conferred on it thereby.

**4. District of Columbia ☞2—Board of commissioners, in exercising authority, must strictly comply with law.**

The board of commissioners, in exercising its authority, must strictly comply with every requirement of law.

**5. District of Columbia ☞2—Board of commissioners not presumed to have acted within jurisdiction.**

There is no presumption that board of commissioners acted within its jurisdiction in issuing permit for construction of garage in residential district.

**6. Livery stable and garage keepers ☞4½— Jurisdiction of board of commissioners to issue permit for garage in residential district does not attach until applicant has filed requisite consents.**

Jurisdiction of board of commissioners of District of Columbia to issue permit for construction of garage under regulations requiring written consent of owners of 75 per cent. of all property in square, or within 200 feet from proposed garage, not separated therefrom by steet, adopted under Act March 1, 1920, does not attach until applicant has filed the consents of the requisite number of owners.

**7. District of Columbia ☞2—Court can inquire into question of board's jurisdiction to issue permit for garage.**

In action to compel board of commissioners to revoke permit for construction of garage in residential district, court can inquire into question of whether jurisdiction attached by filing of consents of requisite number of property owners.

Appeal from the Supreme Court of the District of Columbia.

Bill by Mildred M. Hazard and others against Harry A. Blessing and others. Decree of dismissal, and plaintiffs appeal. Reversed and remanded.

L. A. Dent, H. E. Davis, and Hayden Johnson, all of Washington, D. C., for appellants.

F. H. Stephens and Howard Boyd, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. Appellants, plaintiffs below, appeal from a decree of the Supreme Court of the District of Columbia, dismissing a bill in equity in which they sought a mandatory injunction requiring the defendants, Rudolph, Oyster, and Keller, commissioners of the District of Columbia, to revoke, annul and cancel a permit which they had issued to defendant Blessing for the construction of a public garage on the west side of Nineteenth street, between Florida avenue and Wyoming avenue, in the city of Washington.

It appears that defendant Blessing filed with the commissioners an application for a permit to construct the garage in question, and filed therewith what he deemed to be a sufficient number of consents by property owners within the territory lying immediately north of Florida avenue and bounded by Nineteenth street, Connecticut avenue, Columbia road, and Wyoming avenue. The application was made under the regulations promulgated August 30, 1920, by the zon-

ing commission of the District of Columbia, requiring an applicant for a permit to erect a public garage in a residential district to file with the application the written consents of the owners of 75 per cent. of the property within the square where the proposed garage is to be erected.

From the official map of the District of Columbia, it appears that the above territory is divided into two squares, numbered 2534 and 2535. The proposed location of the garage is at the southeast corner of square 2535. It is conceded that 75 per cent. of the property owners in square 2535 have not consented, but it is urged that squares 2534 and 2535 should be construed to constitute a single square. It is conceded that, if this construction be indulged, then more than 75 per cent. of the property owners have given their consents. Upon this issue the present case turns.

At the outset it is essential that we examine certain acts of Congress affecting the platting into streets and squares of that portion of the District where the property in question is located. Under the Act of Congress of March 2, 1893, 27 Stat. 532, entitled "An act to provide a permanent system of highways in that part of the District of Columbia lying outside of the cities of Washington and Georgetown," commonly known as the "Highway Extension Act," the commissioners were required to prepare in sections a plan for the extension of a permanent system of highways over all the portions of the District not included within the limits of the said cities. At the time of the passage of this act, Columbia road, Connecticut avenue, and Nineteenth street had been extended northerly from Florida avenue; Columbia road and Nineteenth street meeting at a given point. The tract of land embraced within the boundary of these streets contained about 14 acres, and was known as Oak Lawn. The tract contained three subdivisions of lots; two in the northern point of the tract, and one in the southern portion of the tract, subdivided for one Dean. Pursuant to the Highway Extension Act, the highway commission projected through said tract from Nineteenth street to Columbia road an extension of Vernon street, the southern line of the street coinciding with slight variations with the northern line of the Dean tract.

By Act of Congress of February 23, 1905, 33 Stat. 737, entitled "An act to designate parcels of land in the District of Columbia for the purposes of assessment and taxation, and for other purposes," the commissioners were authorized and directed to number all the blocks or squares, lots, or parcels of land which had been formed by the highway extension plan as shown by the records of the surveyor of the District of Columbia, "and to place the numbers so given upon the said highway extension plan: Provided, that in all cases where two or more blocks or parts of contiguous existing subdivisions are surrounded as a group by existing streets or roads, or by proposed streets of the highway extension plan, such groups shall be numbered as a block or square upon the recorded plats of the highway extension plan." Pursuant to the authority thus vested in the commissioners, the portion of said original Oak Lawn tract lying north of Vernon street extended was numbered square 2535, and the portion of the tract south of said street was numbered square 2534. In other words, squares 2534 and 2535 were separated by the projected extension of Vernon street.

By Act of Congress of March 1, 1920, 41 Stat. 500, entitled "An act to regulate the height, area, and use of buildings in the District of Columbia and to create a zoning commission, and for other purposes," a zoning commission was created, consisting of the commissioners of the District, the officer in charge of public buildings and grounds, and the superintendent of the United States Capitol building and grounds. The act empowered the commission to divide the District of Columbia into districts, to be known respectively as height, area, and use districts, and adopt regulations specifying the height and areas of buildings, thereafter to be erected or altered therein, and the purposes for which the buildings and premises therein may be used. The commission also was given power to make such orders and adopt such regulations as might be necessary to accomplish the purposes of the act. Accordingly regulations were formulated, and it was pursuant to these that the commissioners were required to act in issuing the permit in the present case.

By section 1 of the regulations a square is defined as "land so designated on the records of the assessor of the District of Columbia"—in other words, as numbered by the commissioners under the act of 1905. Section 3 provides for the granting of permits for the erection of public garages in the residential districts as follows: "That in the residential district a public garage where no repair facilities are maintained may be established, erected and enlarged if, when permit is issued, there are on file

with the commissioners of the District of Columbia, the written consents of the owners of .75 per cent. of (a) the property within the square where it is proposed to establish, erect or enlarge such garage, and (b) any other property within 200 feet of the proposed establishment and not separated therefrom by a street: Provided, however, that no part of said garage shall be within 75 feet of any street building line. In computing the area of consent required under this regulation so much of the property as is used as public garage or stables shall be counted as consenting." Section 22 of the regulations provides that "when a street as shown on the highway plan is not public property and is not indicated as being in any height, area or use district, the designation of the adjoining square or parcel shall extend to the center line of said street." The regulations further vested in the commissioners of the District of Columbia authority to interpret and apply the same, and provided for appeals from the Commissioners to the zoning commission.

It is averred in the bill, and admitted by the motion to dismiss, that "the said zoning commission , * * * adopted the system of designations of square shown on the record plat books as aforesaid, and in conformity with the highway extension plan; and in respect of the tract, Oak Lawn, hereinbefore described and referred to, it shows the designations of square 2535 and 2534 as on the plat No. 65 of volume 2 of said plat books as aforesaid." The plat books referred to are the ones prepared pursuant to the act of 1905.

Thus it appears that the original tract, Oak Lawn, with the exception of a small portion at the northern point, which was cut off by the extension of Wyoming avenue, and which is not important in this controversy, was, pursuant to the acts of Congress, divided into two squares, separated by the extension of Vernon street, and that they so appear on the official plats of the District of Columbia. It follows that the term "square" as used in section 3 of the regulations of the zoning commission, under which it is sought to procure the permit in this case, must conform to the squares thus established. This being true, it likewise follows that, to procure a legal permit for the erection of the garage in question, the applicant must present to the commissioners the written consents of the owners of 75 per cent. of (a) the property within square 2535, computed from the center line of Vernon street extended, and (b) any other property within 200 feet of the proposed garage, "and not separated therefrom by a street."

[1] This brings us to the consideration of the effect of the 200-foot clause in the regulation. It would seem that not only is the applicant required to furnish the consents of 75 per cent. of the property owners within the square, where the proposed garage is to be located, but in addition thereto the applicant must procure the consents of 75 per cent. of the owners of lands adjacent to said square, not including, however, such lands as are separated by a street from the proposed location. It is contended, however, that inasmuch as Vernon street extended is merely on paper, still private property upon which taxes are paid by the owners, and on a portion of which large buildings have been constructed, it should not be regarded as a street within the 200-foot clause of the regulation. But streets projected by the highway commission are designated as square boundaries by the act of 1905, and in obedience to this express mandate of Congress Vernon street extended was so treated by the commissioners in numbering the squares, and by the zoning commission in establishing the regulations under which the present permit was issued. We are therefore irresistibly forced to the conclusion that, under a reasonable construction of the foregoing statutes and regulations, Vernon street extended, for the purposes of this case, must be regarded as a street, and that the consents required in connection with the present application must all come from property owners within the limits of square 2535.

[2-5] Counsel for defendants assail the jurisdiction of equity to restrain or control the action of the commissioners in this matter, on the theory that the commissioners are executive officers, and as such their discretion cannot be so controlled. We are not impressed with this contention. The question of jurisdiction here involved is one affecting the power of the commissioners to issue the permit in question. Under the regulation certain conditions precedent to issuing a permit are prescribed, namely, that with the application for the permit shall be filed the written consents of the owners of 75 per cent. of the property within the square where the garage is to be constructed. The board of commissioners is a creature of statute. Its jurisdiction is limited to the powers expressly conferred upon it by statute. Hence in exercising its au-

thority there must be a strict compliance with every requirement of law. Fay v. MacFarland, 32 App. D. C. 295, 299. Unlike a court, there is no presumption favorable to jurisdiction. Every step taken must clearly conform to the requirements of the statute or the regulations under which the board is attempting to proceed. In such cases it is always competent for the courts to inquire into and construe the law determinative of the existence of jurisdiction.

The rule defining the extent to which courts will inquire into and control the authority of executive officers in the execution of their duties is clearly stated in Roberts v. United States, 176 U. S. 221, 231, 20 S. Ct. 376, 44 L. Ed. 443, and approved in Work et al. v. United States ex rel. McAlester-Edwards Co., 262 U. S. 200, 208, 43 S. Ct. 580, 583, 67 L. Ed. 949, as follows: "Every statute to some extent requires construction by the public officer whose duties may be defined therein. Such officer must read the law, and he must therefore, in a certain sense, construe it, in order to form a judgment from its language what duty he is directed by the statute to perform. But that does not necessarily and in all cases make the duty of the officer anything other than a purely ministerial one. If the law directs him to perform an act in regard to which no discretion is committed to him, and which, upon the facts existing, he is bound to perform, then that act is ministerial, although depending upon a statute which requires, in some degree, a construction of its language by the officer."

[6, 7] In the present case the commissioners, as a preliminary step in considering an application for a permit, are required to perform the ministerial duty of ascertaining whether or not the requisite number of valid consents have been filed with the application. This amounts to nothing more than the mere clerical task of checking the title and computing the area of the property of those consenting with relation to the entire area of the square. This is a case, therefore, where the discretion of the commissioners does not attach until jurisdiction of the parties has been obtained. It is in the nature of a proceeding in rem, affecting all the property in the square where the proposed garage is to be located until the requisite number of property owners are brought in through the process prescribed, the commissioners are powerless to proceed, even with the consideration of the application. Of course, the commissioners have jurisdiction of the general subject-matter of issuing building permits in this District; but the jurisdiction of the res and of the parties does not attach until the applicant has filed the consents of the requisite number of property owners within the square where the building is to be erected. These consents serve a similar purpose to that of summons to secure jurisdiction of the parties interested, and until this requirement of the law has been complied with any action taken by the commissioners in the further consideration of the application is a mere nullity. The courts will therefore, to this extent, inquire into the question of jurisdiction to determine whether the commissioners have the parties in interest properly before them. When this appears, the commissioners, acting in their executive capacity, may then proceed with the determination of the matter in issue.

The decree is reversed, with costs, and the cause is remanded for further proceedings not inconsistent with this opinion.