## SOLO v. CITY OF DETROIT.

1. MANDAMUS—PUBLIC OFFICERS—MINISTERIAL ACTS.

To support mandamus against public officers, plaintiffs must have a clear legal right to performance of the specific duty sought to be compelled and defendants must have the clear legal duty to perform such act; the act involved must be a ministerial act and leave nothing to the exercise of discretion or judgment.

2. SAME—DISCRETION OF OFFICERS—SENIORITY RIGHTS—TRANSPORTATION SERVICE—CITY CHARTER.

Employees *held,* not entitled to writ of mandamus to compel granting of seniority rights based upon initiation of period of employment with predecessor employer, a common carrier over whose lines defendant city and its board of street railway commissioners extended street railway service, where, from undisputed facts, it does not appear that plaintiffs have a clear legal right to such seniority rights in view of the fact that defendant board would have to determine what was an "acquisition by purchase" within meaning of charter provision granting seniority rights and whether or not such had been effected by extending the service (Detroit Charter, title 4, chap. 13, § 24).

3. COSTS—PUBLIC QUESTION—SENIORITY RIGHTS.

No costs are allowed in consolidated cases wherein it was sought to establish seniority rights based upon employment by common carrier predecessor to municipally operated service, a public question being involved.

Appeal from Wayne; Miller (Guy A.), J. Submitted September 15, 1942. (Calendar No. 41,887.) Decided December 23, 1942. Rehearing denied April 6, 1943.

Separate petitions by Daniel Solo, Myron McConnell, and one Arthur Endres for writ of mandamus

to compel City of Detroit and its Board of Street Railway Commissioners to compel recognition of seniority rights. Cases consolidated for trial and appeal. Petitions granted. Defendants appeal. Reversed.

*Benjamin Marcus* and *Earl N. Nash,* for plaintiffs.

*Rodney Baxter* and *James S. Shields,* for defendants.

CHANDLER, C. J.   The plaintiffs in the three consolidated cases herein filed petitions for mandamus in the court below to compel defendants, city of Detroit and board of street railway commissioners, to grant them seniority rights in accordance with their respective claims as employees of said respondents. Daniel Solo claims he is entitled to have seniority computed from August 12, 1913; Myron McConnell claims from October 15, 1917; and Arthur Endres seeks a rating commencing December 26, 1919. Defendants claim that the seniority rights of all three plaintiffs should be computed from August 21, 1928.

Prior to May 15, 1922, two systems of transportation operated in the city of Detroit; one was the Detroit United Railways and the other system was municipally owned. On the date mentioned, the city, by written agreement, acquired certain property and transportation lines from the Detroit United Railways but the agreement specifically excluded what was known as the Wyandotte division. All three plaintiffs were at that time employed by the Detroit United Railways on the Wyandotte division and remained so employed, including the period of receivership of said Detroit United Railways, until August, 1928.

On August 17, 1928, defendant board of street railway commissioners passed the following resolution:

"The question of the extension of the street car service to Penn Wye at Wyandotte from River Rouge, came again before the commission. The Detroit United Railways offer to pay the department of street railways the sum of 25c per car mile for this service, and stand all expenses in connection therewith, except platform expense and maintenance of equipment. By resolution unanimously adopted, the general manager was authorized to install this service commencing Monday, August 20th, for a trial period of 90 days."

By the foregoing resolution and the following letter to the defendant board, dated August 21, 1928, from the receivers of the Detroit United Railways, defendants extended their transportation over the so-called Wyandotte division in accordance with the terms stated.

"We hereby make the following proposal to the D. S. R. for the operation of its West Jefferson avenue through cars between downtown Detroit and Wyandotte over the Wyandotte division from West Jefferson car house at Detroit city limits to Penn Wye in Wyandotte.

"The number of cars to be operated between the West Jefferson car house and Wyandotte to be agreed upon between us.

"The department of street railways to furnish at its own cost the cars and trainmen for this operation and to assume liability for injuries and the damages to persons or property in connection with the operation of the cars.

"Detroit United Railway to furnish track and overhead trolley system and to maintain same, and to furnish power between the West Jefferson car

house and Wyandotte for the operation of the D. S. R. cars.

"The D. S. R. to collect all revenue between West Jefferson avenue car house and Wyandotte; the method of fare collection and accounting to be determined and agreed upon between us.

"The D. S. R. is to return to the D. U. R. the difference between the revenue collected and the amount of the operating expenses of the D. S. R. cars between the West Jefferson avenue car house and Wyandotte, the operating expenses being determined upon the basis per car miles operated by the D. S. R. between West Jefferson car house and Wyandotte at a fixed rate of 25c per car mile. If the revenue collected is less than the operating expenses so determined, the D. U. R. will reimburse the D. S. R.. for this difference.

"This proposal is to be subject to a 90-day trial period beginning with the first day of operation; the operation to be discontinued after 90 days by either party giving the other 30 days' notice of its intention so to do."

Although the letter and resolution contemplated operation over this division for a trial period of 90 days, it appears to be conceded that defendants operated said line for some three years after initiation of the service.

Plaintiffs testified that when this change was effected, they were instructed by Detroit United Railway officials to report to defendants' Fort Street car house, which they did on the 19th and 20th of August, 1928, and were there told to instruct employees of defendants in the operation of this division.

On August 21, 1928, they applied for and received employment with defendant Department of Street Railways. The applications for employment in each instance denied that the applicant was then em-

ployed by the city of Detroit. The applications were approved and plaintiffs have since been in the employ of defendants, and have been granted seniority rights commencing as of August 21, 1928.

The trial court granted writs of mandamus in each case according to the claims of the respective plaintiffs and defendants have appealed.

Plaintiffs contend that their seniority rights should be computed from the date each was first employed by the Detroit United Railways by virtue of the provisions of the following amendment to the charter of the city of Detroit, effective April 14, 1937.[*]

"Sec. 24. Said board of street railway commissioners shall establish a complete and uniform system of seniority service for all employees not classified as executive employees of the said board of street railway commissioners, engaged in transportation service under which system the continuous service of said employees shall be deemed to have commenced from the date of their initial employment by the said board of street railway commissioners, *except as to employees engaged on any part of the transportation system which has been acquired by purchase, the initial date of the continuous service of such employees shall be deemed to have commenced from the date of their employment by their previous employer or employers from whom such part of the transportation system has been acquired by purchase.*" (Italics ours.)

Defendants claim that mandamus is not a proper remedy and that the trial court had no jurisdiction to issue the writs. The principles controlling the availability of this legal remedy were reviewed in *Toan* v. *McGinn*, 271 Mich. 28, where we said, p. 34:

"The applicable rules are clear. To support mandamus, plaintiffs must have a clear legal right to

---

[*] Detroit Charter, title 4, chap. 13, § 24.—Reporter.

performance of the specific duty sought to be compelled; defendants must have the clear legal duty to perform such act; and it must be a ministerial act, one 'where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment.' 38 C. J. p. 598. See, also, *Globe Indemnity Co.* v. *Richer,* 264 Mich. 224; *Sezor* v. *Procter & Gamble Soap Co.,* 267 Mich. 128.''

A statement of the rules is simple. The confusion arises in their application.

In the instant case, the facts that transpired are all undisputed, yet we do not care to say that under these established facts the duty of the board of street railway commissioners became ministerial, that nothing was left to the exercise of their judgment and that plaintiffs had a clear legal right to the relief sought.

To entitle plaintiffs to seniority, as claimed by them, it should appear that their employment had been ''continuous,'' and that they had been so employed on a ''part of the transportation system which had been acquired by purchase.'' If their employment was not continuous, the break occurred on August 21, 1928, when defendants commenced operation over the Wyandotte division and plaintiffs applied for employment with them, stating that they were not then, at the time of making such application, in the employ of the city of Detroit. Not this issue, but the necessity of determining whether the circumstances under which operation of the Wyandotte line was undertaken by defendants was an acquisition thereof by purchase, is the serious point involved. It concerns, first, a determination of the exact meaning of the words ''acquired by purchase,'' and, second, a construction and determination of the legal effect of the resolution and letter,

hereinbefore quoted, under which operation of the line was instituted, to reach the essential conclusion as to whether these facts constituted an acquisition by purchase in accordance with the interpretation given the charter amendment. For example, was it a "purchase" or merely a rental arrangement? From a reading of said resolution and letter, it is self evident that the exercise of considerable judgment and discretion would be involved, and that on the facts the duties of the defendant board are not clothed with such precision and certainty as to confer upon plaintiffs a clear legal right to the relief sought.

Plaintiffs rely upon and quote extensively from *Roberts* v. *United States,* 176 U. S. 221 (20 Sup. Ct. 376, 44 L. Ed. 443), in support of their position, wherein it is stated that a duty to be performed by a public officer does not necessarily lose its character of being ministerial merely because the performance of such act depends, to some extent, upon the construction of a statute. However, in that case, it appears to us that the degree of judgment required upon the part of the public officer in question was relatively small in magnitude as compared with that devolving upon defendants herein.

Our conclusion that the remedy of mandamus is not available to these plaintiffs obviates discussion of other questions raised.

The orders of the trial court are reversed and the writs denied. A public question being involved, no costs are allowed.

BOYLES, NORTH, STARR, BUTZEL, and SHARPE, JJ., concurred. WIEST and BUSHNELL, JJ., did not sit.