SOLO *v.* CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS—TRANSPORTATION SYSTEM EMPLOYEES—SENIORITY RIGHTS—CONTRACTS.

   Agreement whereby city which had theretofore purchased all of the property of a privately-owned municipal street railway system except one division extended the transportation service over such division upon payment by the receivers of the private corporation of a stipulated sum per car mile for such service did not constitute a purchase of such division within meaning of city charter extending seniority rights of transportation system employees to cover period of service with previous employer where such transportation system has been acquired by purchase (Detroit Charter, title 4, chap. 13, § 24).

2. APPEAL AND ERROR—QUESTIONS REVIEWABLE—JUDGMENT—RES JUDICATA.

   In equity suits to establish seniority rights of municipally-owned transportation system employees to cover period of service with previous employer where it is determined that such earlier period of service may not be included in determination of plaintiffs' seniority rights, question of whether or not mandamus proceeding between same parties to obtain same relief was *res judicata* of the cases at bar is not determined.

Appeal from Wayne; Miller (Guy A.), J. Submitted October 7, 1943. (Docket Nos. 43, 44, 45, Calendar Nos. 42,501, 42,502, 42,503.) Decided November 29, 1943.

Separate bills by Daniel Solo, Myron McConnell, and Arthur Endres against City of Detroit to establish seniority rights of plaintiff. Cases consolidated. Decrees for plaintiffs. Defendant appeals. Reversed.

*Benjamin Marcus* and *Earl N. Nash,* for plaintiffs.

*Rodney Baxter* and *James S. Shields,* for defendant.

WIEST, J.   The same plaintiffs were before this court in *Solo* v. *City of Detroit,* 303 Mich. 672, where we reversed writs of mandamus issued by the circuit court granting them the relief they now again seek.   Their motion for rehearing or transfer to the equity side of the court was denied.   Each plaintiff then filed a bill in equity alleging the same facts and was granted the relief denied in the mandamus proceeding.   By stipulation the records of the mandamus proceeding were made a part of the record herein and we later quote the following facts from our former opinion.

The above cases, consolidated for hearing, involve the seniority rating rights of plaintiffs as employees of the city of Detroit department of street railways, a municipal transportation system.   Plaintiffs were formerly employees of the Detroit United Railways, not a municipally-owned system, and the question here turns upon whether their service there is to be computed as continuous, in connection with their later service with the Detroit street railways, under the 1937 amendment to the Detroit city charter, title 4, chap. 13, § 24, which reads:

"Said board of street railway commissioners shall establish a complete and uniform system of seniority service for all employees not classified as executive employees of the said board of street railway commissioners, engaged in transportation service under which system the continuous service of said employees shall be deemed to have commenced from the date of their initial employment by the said board of street railway commissioners, except as to

employees engaged on any part of the transportation system which has been *acquired by purchase,* the initial date of the continuous service of such employees shall be deemed to have commenced from the date of their employment by their previous employer or employers from whom such part of the transportation system has been *acquired by purchase.*"

This charter provision relative to computation of seniority service applies only in case of purchase of the transportation system operated by the Detroit United Railways. May 15, 1922, the city of Detroit, by written agreement, acquired certain property and transportation lines from the Detroit United Railways, but the agreement specifically excluded what is known as the Wyandotte division. The three plaintiffs were at that time employed by the Detroit United Railways on the Wyandotte division and remained so employed, including the period of the receivership of said Detroit United Railways, until August, 1928.

"On August 17, 1928, defendant board of street railway commissioners passed the following resolution:

" 'The question of the extension of the street car service to Penn Wye at Wyandotte from River Rouge, came again before the commission. The Detroit United Railways offered to pay the department of street railways the sum of 25¢ per car mile for this service, and stand all expenses in connection therewith, except platform expense and maintenance of equipment. By resolution unanimously adopted, the general manager was authorized to install this service commencing Monday, August 20th, for a trial period of 90 days.'

"By the foregoing resolution and the following letter to the defendant board, dated August 21, 1928,

from the receivers of the Detroit United Railways, defendants extended their transportation over the so-called Wyandotte division in accordance with the terms stated.

" 'We hereby make the following proposal to the D. S. R. for the operation of its West Jefferson avenue through cars between downtown Detroit and Wyandotte over the Wyandotte division from West Jefferson car house at Detroit city limits to Penn Wye in Wyandotte.

" 'The number of cars to be operated between the West Jefferson car house and Wyandotte to be agreed upon between us.

" 'The department of street railways to furnish at its own cost the cars and trainmen for this operation and to assume liability for injuries and the damages to persons or property in connection with the operation of the cars.

" 'Detroit United Railway to furnish track and overhead trolley system and to maintain same, and to furnish power between the West Jefferson car house and Wyandotte for the operation of the D. S. R. cars.

" 'The D. S. R. to collect all revenue between West Jefferson avenue car house and Wyandotte; the method of fare collection and accounting to be determined and agreed upon between us.

" 'The D. S. R. is to return to the D. U. R. the difference between the revenue collected and the amount of the operating expenses of the D. S. R. cars between the West Jefferson avenue car house and Wyandotte, the operating expenses being determined upon the basis per car miles operated by the D. S. R. between West Jefferson car house and Wyandotte at a fixed rate of 25¢ per car mile. If the revenue collected is less than the operating expenses so determined, the D. U. R. will reimburse the D. S. R. for this difference.

" 'This proposal is to be subject to a 90-day trial period beginning with the first day of operation; the operation to be discontinued after 90 days by

either party giving the other 30-days' notice of its intention so to do.'

"Although the letter and resolution contemplated operation over this division for a trial period of 90 days, it appears to be conceded that defendants operated said line for some three years after initiation of the service."

On August 21, 1928, plaintiffs applied for and received employment with the city department of street railways. The mentioned agreement was not a purchase within the meaning of the charter provision and plaintiffs' seniority rights in the employment of the Detroit street railway may not be computed by including their previous seniority service rights with the Detroit United Railways. The fact that some of the cars of the Detroit United Railways furnished interurban service previous to the mentioned agreement is of no consequence, and if plaintiffs operated in such service as employees of the Detroit United Railways that has no bearing upon the question here involved.

Under our holding herein it is unnecessary to determine whether our former opinion is *res judicata* of the cases at bar.

Seniority service rating rights of plaintiffs are to be computed from the day they entered the service as employees of the Detroit street railway system, and this excludes previous seniority rights, if any, acquired in the service of the Detroit United Railways.

The decrees in the circuit court granting plaintiffs seniority rights, contrary to what we have just said, are reversed and the bills dismissed with costs to defendants.

BOYLES, C. J., and CHANDLER, NORTH, STARR, BUTZEL, and SHARPE, JJ., concurred with WIEST, J. BUSHNELL, J., did not sit.