**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 1, 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RON SIMMAT,

        Plaintiff-Appellant,

        v.

UNITED STATES BUREAU OF
PRISONS; G.F. JACKSON, Dentist,
U.S. Bureau of Prisons; and REID
ELDEN STEMPEL, Dentist, U.S.
Bureau of Prisons,

        Defendants-Appellees.

No. 03-3361

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(NO. 02-CV-3410-JWL)**

Ron Simmat filed briefs pro se.

Janet Koven Levit, Associate Professor, University of Tulsa College of Law,
Tulsa, Oklahoma, for Plaintiff-Appellant.

Emily B. Metzger, Assistant United States Attorney, (Eric F. Melgren, United
States Attorney, with her on the briefs) Wichita, Kansas, for Defendants-
Appellees.

Before **KELLY**, **HARTZ**, and **McCONNELL**, Circuit Judges.

**McCONNELL**, Circuit Judge.

At least since *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976), federal courts have recognized the right of prisoners to relief if prison officials deny them basic medical care, in violation of the Eighth Amendment. In the case of state prisoners, the vehicle for such suits is 42 U.S.C. § 1983, with its jurisdictional predicate, 28 U.S.C. § 1343. *See Simmat; Hunt v. Uphoff*, 199 F.3d 1220 (10th Cir. 1999). In the case of federal prisoners, surprisingly, the vehicle is not so clear. In *Farmer v. Brennan*, 511 U.S. 825, 846 (1994), the Supreme Court stated only that the courts could "grant appropriate relief" on a federal prisoner's Eighth Amendment claim for damages and injunctive relief against prison officials in their individual and official capacities. Some courts have treated such actions as *Bivens* actions, even when the inmate seeks injunctive relief against officials in their official capacities. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[1] Others have assumed that there exists

---

[1]*See Boyce v. Ashcroft*, 251 F.3d 911 (10th Cir. 2001) (affirming dismissal of a federal prisoner's habeas petition seeking transfer, noting that constitutional challenges to conditions not affecting the fact or duration of confinement, "e.g. conditions of confinement, must proceed under Section 1983 or *Bivens*"), *vacated as moot*, 268 F.3d 953 (10th Cir. 2001); *id.* at 918 n.4 ("Petitioner indeed has filed a *Bivens* action, seeking an injunction which directs the BOP to transfer him to FCI Sheridan."); *see also Smith v. Fed. BOP*, 300 F.3d 721 (6th Cir. 2002) (per curiam) (considering jurisdiction over a federal prisoner's suit to enforce a

(continued...)

2

a non-statutory basis for injunctive action, perhaps coupled with declaratory relief under the Declaratory Judgment Act, or civil actions in the nature of mandamus.[2] In the latter cases, the question arises whether the actions are barred by sovereign immunity. Very often the nature of the claim and the basis for rejecting sovereign immunity are not addressed.[3] We believe clarification would be useful.

This case involves an action against prison dentists in their official capacity for injunctive relief. The defendants, the prison dentists and the United States Bureau of Prisons ("BOP"), assert that the action is barred by sovereign immunity. We hold that jurisdiction exists under 28 U.S.C. §§ 1331 or 1361, that

---

[1](...continued)
settlement agreement to be proper under § 1331, the settlement agreement itself, and "pursuant to the doctrine announced in *Bivens*"); *Kane v. Winn*, 319 F. Supp. 2d 162, 213 (D. Mass. 2003) ("One can also seek injunctive relief via a *Bivens* action.") (citing *Farmer v. Brennan*, 511 U.S. at 851).

[2]*See Rourke v. Thompson*, 11 F.3d 47 (5th Cir. 1993) (construing a federal prisoner's habeas petition based on denial of medical care and arbitrary disciplinary sanctions as "a complaint requesting injunctive relief from violation of his federal constitutional rights") (citing *Bell v. Hood*, 327 U.S. 678, 684 (1946), and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 395–97 (1971), in support of a non-statutory cause of action); *Bono v. Saxbe*, 450 F. Supp. 934 (E.D. Ill. 1978) (predicating jurisdiction on § 1331 and granting injunctive relief in a federal prisoner class action raising Eighth Amendment and due process claims).

[3]*See, e.g.*, *Thornburg v. Abbott*, 490 U.S. 401 (1989) (prisoners' class action for injunctive relief mounting facial and as-applied First Amendment challenges to a BOP policy governing "outside" publications); *Kimberlin v. United States Dept. of Justice*, 318 F.3d 228 (D.C. Cir. 2003) (per curiam) (rejecting federal prisoners' First Amendment challenge to a BOP regulation prohibiting electric instruments).

3

the case is properly denominated an action for relief in the nature of mandamus, authorized under 28 U.S.C. § 1361, and that sovereign immunity is not a bar. We also hold, however, that plaintiff's suit against the prison dentists must be dismissed without prejudice for failure to exhaust his administrative remedies, as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), and that his claims against the Bureau of Prisons are not properly before us.

## I.    Background and Facts

Plaintiff-Appellant Ron Simmat was convicted of second degree murder and sentenced by the State of Connecticut to life imprisonment in 1962. Since January 21, 1995, he has been incarcerated in the United States Penitentiary at Leavenworth, Kansas ("USP Leavenworth"). The precise facts and circumstances bearing on Mr. Simmat's problems are not clear on this record, but because Mr. Simmat appeals a grant of summary judgment for the defendants, we will recount the facts in the light most favorable to his case. *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).

Mr. Simmat suffers from a variety of dental problems, including gum disease, several cavities, and a root that protrudes from his gums. In August 1999, he submitted a request to BOP staff to be placed on the treatment list to see

the dentist about a cavity. Dr. Jackson informed him that he had been placed on the list. In November 1999, before getting treatment, Mr. Simmat asked to be placed on the treatment list for a second cavity. Dr. Jackson again informed him that he had been placed on the list. In February 2000, still having received no treatment, Mr. Simmat submitted a third request for an appointment, indicating that he had been waiting since August 1999 and that two of his teeth needed to be treated. Dr. Jackson told him that he was on the treatment list and would be called soon. On April 9, 2000, Mr. Simmat submitted an Inmate Request to Staff form to Dr. Jackson and the Health Services administrator stating that "one of my problem teeth now gives me constant pain, which gets really bad when I lay down." This request concerned a third tooth—number thirty, his "lone chewing molar." Appellant's Supp. Br. 9.

Dr. Jackson examined Mr. Simmat's painful molar on April 13, 2000. He ordered an x-ray, diagnosed periodontal involvement, and noted that the tooth might need to be extracted. He put a "temporary restorative agent" on the tooth and prescribed antibiotics and pain medication. Mr. Simmat alleges that when he asked about a permanent filling, Dr. Jackson told him that he had been "discouraged and reprimanded for providing permanent fillings."

After he treated tooth number thirty, Dr. Jackson removed Mr. Simmat's name from the treatment list. Mr. Simmat saw Dr. Jackson for a follow-up x-ray

5

of tooth number thirty on August 30, 2000. Dr. Jackson did not treat any other teeth at that time, and he asked Mr. Simmat to return for follow-up treatment in two months. Mr. Simmat did not return for follow-up treatment, and he has not seen Dr. Jackson for dental care at any time after August 30, 2000.

Mr. Simmat filed his pro se complaint on December 9, 2002,[4] alleging that prison officials denied him adequate dental care in violation of the Eighth Amendment. Complaint, R. Doc. 1 at 5. The complaint named as defendants Dr. Jackson and Dr. Stempel, in their official capacities, as well as the BOP.[5] Mr. Simmat alleged that the defendants' refusal to provide proper dental care had caused significant deterioration of his oral health, including multiple infected teeth and, at molar number thirty, an "entire root, right out to its tip, sticking out of [his] gum." *Id.* Mr. Simmat sought "an order directed to both defendants, or to their successors in office . . . specifying that all of plaintiff's dental deficiencies be made good, whether or not procedures required to accomplish that are within currently approved dental procedures within the BOP for its prisoners."

---

[4] Mr. Simmat filed the complaint on behalf of himself and a co-plaintiff, James Maass. The district court dismissed Mr. Maass's claim as moot after he was transferred to a state correctional facility in Wisconsin.

[5] The complaint does not name the BOP separately; rather, it names "The United States Bureau of Prisons, in the persons of" Dr. Jackson and Dr. Stempel. R. Doc. 1. Given our obligation to construe pro se pleadings liberally, *see, e.g.*, *McBride v. Deer*, 240 F.3d 1287, 1290 (10th Cir. 2001), and because Mr. Simmat alleges constitutional violations by the BOP as well as the individual defendants, we conclude that Mr. Simmat has adequately named the BOP as a defendant.

6

*Id.* at 5–6.  He did not seek damages.

The defendants moved to dismiss the complaint on the ground that sovereign immunity deprived the court of subject matter jurisdiction.  In the alternative, the defendants moved for summary judgment on the ground that Mr. Simmat failed to raise a genuine issue of fact on his Eighth Amendment claim.[6]

The district court held that sovereign immunity did not deprive it of jurisdiction because Mr. Simmat sought only injunctive relief from alleged constitutional violations by federal officials.  Nevertheless, the district court held that Mr. Simmat failed to raise a genuine issue of fact regarding deliberate indifference to a serious medical condition, the applicable standard for relief under the Eighth Amendment.  *See Perkins v. Kan. Dept. of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999).  Mr. Simmat appealed.

On September 3, 2004, this Court appointed counsel for Mr. Simmat and ordered supplemental briefing addressing whether the court had jurisdiction over claims for injunctive relief against prison officials in their official capacities or

---

[6] The defendants also moved to dismiss for improper service of process, lack of jurisdiction under the Federal Tort Claims Act, and failure to state a claim for mandamus or injunctive relief. The court did not address the motion to dismiss for improper service of process because it was conditioned on construction of Mr. Simmat's claims as individual-capacity claims, and Mr. Simmat had asserted only official-capacity claims.  The court held that the FTCA did not apply to Mr. Simmat's claim for injunctive relief, and it held that he alleged facts sufficient to state a violation of the Eighth Amendment for purposes of a motion to dismiss under Rule 12(b)(6).  The defendants do not raise these arguments on appeal.

for injunctive relief against the BOP.

## II.     Mr. Simmat's Claims Against the Prison Dentists

We turn first to Mr. Simmat's action against the prison dentists, in their official capacities. Until relatively recently, a suit like Mr. Simmat's would have faced serious obstacles deriving from the related doctrines of subject matter jurisdiction and sovereign immunity.  The legacy of those restrictions may well account for the confusion courts still seem to experience regarding the legal forms such litigation may take.  As will be seen, however, Congress has expanded the jurisdiction of federal district courts and narrowed the scope of sovereign immunity, making suits for injunctive relief against federal officers for constitutional derelictions far more straightforward than they used to be.

### A.  Jurisdictional Basis for Action Against Prison Officials

Mr. Simmat argues that his claims against the dentists are within the district court's federal question jurisdiction because they arise under the Constitution of the United States.  *See* 28 U.S.C. § 1331.  In *Bell v. Hood*, the Supreme Court explained that "where the complaint . . . is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court, but for two possible exceptions . . . must entertain the suit."  327 U.S. 678, 681–82 (1946).  The two "possible exceptions" are claims that "clearly appear[] to be immaterial and made solely for the purpose of obtaining jurisdiction" and claims that are

8

"wholly insubstantial and frivolous." *Id.* at 682–83

Mr. Simmat's claim easily meets the basic requirements of federal question jurisdiction. Mr. Simmat alleges that the defendants deprived him of adequate medical care by deliberate indifference to his serious dental needs. This claim arises directly under the Constitution. The Eighth Amendment prohibits the government from incarcerating prisoners without providing adequate medical care. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001). "Prison officials violate the Eighth Amendment when they are deliberately indifferent to the serious medical needs of prisoners in their custody." *Perkins*, 165 F.3d at 811 (citing *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976)). Mr. Simmat's claim is neither "immaterial" nor "frivolous." It thus gives rise to general federal question jurisdiction under 28 U.S.C. § 1331. But jurisdiction is not enough. To bring suit, a plaintiff must also state a claim upon which relief may be granted, what used to be called stating a cause of action. *See, e.g.*, *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 398 (1979) (distinguishing "the cause-of-action argument," which is directed at "the existence of a remedy," from jurisdictional questions).

**B. *Bivens***

Some courts have characterized constitutional claims to enjoin federal officials as *Bivens* claims. *See* note 1, above. *Bivens* was a landmark decision

9

holding that plaintiffs may sue federal officials in their individual capacities for damages for Fourth Amendment violations, even in the absence of an express statutory cause of action analogous to 42 U.S.C. § 1983. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 395–97 (1971); *see also Carlson v. Green*, 446 U.S. 14, 18 (1980) (recognizing a parallel cause of action for Eighth Amendment violations). The defendants are correct, however, that a *Bivens* claim lies against the federal official in his individual capacity—not, as here, against officials in their official capacity. As this Court has explained, an official-capacity claim

> contradicts the very nature of a *Bivens* action. There is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official capacity. Instead, any action that charges such an official with wrongdoing while operating in his or her official capacity as a United States agent operates as a claim against the United States.

*Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001). Moreover, as we shall see, there is no reason to rely on a court-created remedy, like *Bivens*, when Congress has created an adequate means for obtaining legal redress.

## C. Injunction

Another possibility is a claim for an injunction, based on the federal courts' equity jurisdiction, to enforce the dictates of the Eighth Amendment. Federal courts have long exercised the traditional powers of equity, in cases within their jurisdiction, to prevent violations of constitutional rights. *See, e.g., Osborne v.*

*Bank of the United States*, 22 U.S. (9 Wheat.) 738, 858-59 (1824) (Marshall, C.J.); *Davis v. Gray*, 83 U.S. 203, 220 (1873) ("A Circuit Court of the United States, in a proper case in equity, may enjoin a State officer from executing a State law in conflict with the Constitution or a statute of the United States, when such execution will violate the rights of the complainant."); *Ex Parte Young*, 209 U.S. 123, 151–56 (1908) (tracing the history of the doctrine holding that state officers "may be enjoined by a Federal court of equity" from enforcing unconstitutional statutes); *Bell v. Hood*, 327 U.S. 678, 684 (1946) (recognizing the "jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution"); *Bolling v. Sharpe*, 347 U.S. 497 (1954) (holding that the Fifth Amendment and § 1331 created a remedy for unconstitutional racial discrimination in the D.C. public school system). In his concurring opinion in *Bivens*, Justice Harlan cited "the presumed availability of federal equitable relief, if a proper showing can be made in terms of the ordinary principles governing equitable remedies" as a factor distinguishing equitable relief from money damages. *Bivens*, 403 U.S. at 400. Equity thus provides the basis for relief – the cause of action, so to speak – in appropriate cases within the court's jurisdiction.

There was not much scope for exercise of equitable powers by federal courts, however, until enactment of general federal question jurisdiction—the

11

precursor of 28 U.S.C. § 1331—in 1875. Judiciary Act of 1875, ch. 137 § 1, 18 Stat. 470.[7] That Act granted jurisdiction to federal district courts over "all suits of a civil nature at common law or in equity, where the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars, and arising under the Constitution or laws of the United States, or treaties made . . . under their authority." Section 1331 thus provides jurisdiction for the exercise of the traditional powers of equity in actions arising under federal law. No more specific statutory basis is required. *See* John F. Duffy, *Administrative Common Law in Judicial Review*, 77 Texas L. Rev. 113, 147–48 (1998) ("[A] litigant having no other statutory authority for judicial review may unabashedly point to Section 1331 as the basis for injunctive relief against agency officers . . . ."). As already noted, the Supreme Court in *Bell v. Hood* held that suits for relief directly under the Constitution fall within this grant of jurisdiction.

The difficulty with grounding claims for affirmative injunctions requiring federal officers to take action required by the Constitution, after *Bell*, was not cause of action or subject matter jurisdiction but sovereign immunity. Although nominally brought against the prison dentists, Mr. Simmat's claim is in reality against the United States. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985)

---

[7]*Osborn v. Bank of the United States*, for example, arose under the statute incorporating the Bank, which included a grant of federal court jurisdiction in cases involving the Bank. 22 U.S. at 818.

("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978)).  In *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949), the Supreme Court appeared to restrict the availability of injunctive relief against federal officials.[8]  *Larson* recognized the traditional exception to sovereign immunity, commonly referred to as the *ultra vires* doctrine, permitting suits for prospective relief when government officials act beyond the limits of statutory authority or when the statute from which government officials derive their authority is itself unconstitutional.  *See id.* at 690.  But *Larson* reasserted the importance of the line between injunctions prohibiting illegal action and injunctions requiring officials to act.  *Larson* explained that

> a suit may fail, as one against the sovereign, even if it is claimed that the officer being sued has acted unconstitutionally or beyond his statutory powers, if the relief requested can not be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign or the disposition of unquestionably sovereign property.

*Id.* at 691 n.11.  The defendants in this case argue that *Larson* blocks Mr.

---

[8]For descriptions of sovereign immunity doctrine prior to *Larson*, see Roger C. Cramton, *Nonstatutory Review of Federal Administrative Action: The Need for Statutory Reform of Sovereign Immunity, Subject Matter Jurisdiction, and Parties Defendant*, 68 Mich. L. Rev. 387, 400-04 (1970); David C. Currie, THE CONSTITUTION IN THE SUPREME COURT: THE FIRST HUNDRED YEARS, 1789-1888, at 416-28 (1985).

13

Simmat's suit, which, in their view, would "require affirmative action by the sovereign," namely provision of dental care. Aple. Supp. Br. 23–24.

The defendants' interpretation of *Larson* would leave prisoners without a remedy for federal prison officials' failure to carry out their constitutional duties, violating the basic principle that "where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief . . . ." *Bell v. Hood*, 327 U.S. 678, 684 (1946) (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803)); *see also Farmer v. Brennan*, 511 U.S. 825, 846 (1994) (stating that the courts could "grant appropriate relief" on a federal prisoner's Eighth Amendment claim for damages and injunctive relief against prison officials in their individual and official capacities).

Aware of the impact of the doctrine of sovereign immunity on vindication of constitutional and other legal rights, Congress passed legislation in 1976 to waive sovereign immunity in most suits for nonmonetary relief:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702. This waiver is not limited to suits under the Administrative Procedure Act. *See Chamber of Commerce v. Reich*, 74 F.3d 1322, 1329 (D.C.

14

Cir. 1996) ("The APA's waiver of sovereign immunity applies to any suit whether under the APA or not."); *see also United States v. Murdock Mach. & Engr. Co.*, 81 F.3d 922, 930 n.8 (10th Cir. 1996) (describing § 702 as "a general waiver of the government's sovereign immunity from injunctive relief"). Sovereign immunity is therefore not a bar to Mr. Simmat's action for injunctive relief against the prison dentists.[9]

## D. *Relief in the nature of mandamus*

The district court also had jurisdiction under 28 U.S.C. § 1361, which provides:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

Mandamus is the traditional writ designed to compel government officers to

---

[9] We do not address the question of whether, or under what circumstances, Mr. Simmat could assert a claim against the prison dentists under the APA. Mr. Simmat expressly states that he does not seek "judicial review *under* the APA but rather under the Eighth Amendment." Aplt. Supp. Reply Br. 12. In the first place, it does not appear that Mr. Simmat wishes to obtain review of any administrative proceeding, *see Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1573–74 (10th Cir. 1994), but to file an original proceeding in which he could take discovery, introduce evidence, and make arguments for the first time in court. Moreover, he appears to concede that his claim does not satisfy the APA's requirement of "final agency action." *See* 5 U.S.C. § 704. Agency action is not "final" for purposes of § 704 until "an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule." *Darby v. Cisneros*, 509 U.S. 137, 146 (1993). As explained below, Mr. Simmat has not exhausted administrative remedies as required by the Prison Litigation Reform Act, *see infra* section II.B.

15

perform nondiscretionary duties. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 168–69 (1803). Significantly, application of the mandamus remedy to require a public official to perform a duty imposed upon him in his official capacity is not limited by sovereign immunity. In *Houston v. Ormes*, the Court held that suits to compel federal officers "'to perform some ministerial duty imposed upon them by law, and which they wrongfully neglect or refuse to perform . . . would not be deemed suits against the United States within the rule that the Government cannot be sued except by its consent.'" 252 U.S. 469, 472-73 (1920) (quoting *Minnesota v. Hitchcock*, 185 U.S. 373, 386 (1902)); *see also, e.g.*, *Roberts v. United States ex rel. Valentine*, 176 U.S. 221 (1900) (granting mandamus against the United States Treasurer); *Washington Legal Foundation v. U.S. Sentencing Comm'n*, 89 F.3d 897, 901 (D.C. Cir. 1996).

In federal courts, however, mandamus has had a curious history, which may account for its relative disuse. In *Marbury*, the Court held that the Supreme Court did not have original jurisdiction to issue writs of mandamus, impliedly suggesting that the writ might be available in the district courts. In 1813, however, the Court held that the Judiciary Act did not grant jurisdiction to federal courts to issue writs of mandamus except in aid of their jurisdiction. *M'Intire v. Wood*, 11 U.S. (7 Cranch) 504, 506 (1813); *cf.* 28 U.S.C. § 1651. That position,

16

possibly a reflection of Jeffersonian notions of separation of powers,[10] lasted only 25 years. In *Kendall v. United States ex rel. Stokes*, 37 U.S. (12 Pet.) 524, 619–22 (1838), the Court held, ingeniously, without overruling *M'Intire*, that the federal circuit court for the District of Columbia had inherited the common law jurisdiction of the courts of Maryland, and thus had power to issue writs of mandamus. That meant that mandamus was available against federal officials, but only in the District Court for the District of Columbia. Obviously, that was inconvenient for plaintiffs in other parts of the country, and discouraged use of the writ. By enactment of the Mandamus and Venue Act of 1962, P.L. 87-748, § 1(a), 76 Stat. 744 (codified at 28 U.S.C. § 1361), Congress ended this historical anomaly and extended mandamus jurisdiction to all federal district courts.

To be sure, with the abolition of the traditional common law forms of action, the writ of mandamus is no longer technically available. But Federal Rule of Civil Procedure 81(b) provides, "Relief heretofore available by mandamus . . . may be obtained by appropriate action or by appropriate motion under the practice

---

[10]Jefferson, through his Attorney General, Caesar Rodney, insisted that it was a violation of separation of powers for the courts to direct the exercise of an executive function through such means as writs of mandamus. See Report of the Attorney General of the United States, July 15, 1808, in Aurora General Advertiser, No. 5464, at 2-3 (Aug. 9, 1808) (William J. Duane & Co., pub.), *quoted and discussed in* Michael W. McConnell, *The Story of* Marbury v. Madison*: Making Defeat Look Like Victory*, *in* Constitutional Law Stories 13, 29 (Michael C. Dorf ed. 2004). *M'Intire* was written by Jeffersonian appointee Justice William Johnson.

17

prescribed in these rules." The generic "civil action" of the new rules, *see* Fed. R. Civ. P. 2, provides the form of action in which mandamus relief is now available. Congress confirmed the availability of relief "in the nature of mandamus" with the passage of the Mandamus and Venue Act, which grants the district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

Federal courts have often invoked § 1361 as the jurisdictional basis for challenges to federal prison conditions. *See, e.g.*, *Kahane v. Carlson*, 527 F.2d 492, 496 (2d Cir. 1975) (considering a First Amendment challenge to prison food services and ordering federal officials to provide "a diet sufficient to sustain the prisoner in good health without violating the Jewish dietary laws"); *Workman v. Mitchell*, 502 F.2d 1201, 1205 (9th Cir. 1974) (upholding jurisdiction under § 1361 to consider a due process challenge to prison disciplinary proceedings); *Waddell v. Alldredge*, 480 F.2d 1078 (3d Cir. 1973) (per curiam) (exercising jurisdiction under § 1361 to consider a suit by Black Muslim inmates to compel accommodation of worship services and service of at least one pork-free meal a day); *Taylor v. Blackwell*, 418 F.2d 199 (5th Cir. 1969) (holding that § 1361 provided jurisdiction over a federal inmate's claim alleging wrongful denial of good-time credits) (citing *Walker v. Blackwell*, 360 F.2d 66 (5th Cir. 1966)). We

18

endorse this practice for challenges to the failure of prison officials to carry out nondiscretionary duties.

Mandamus relief is available only to compel a government officer to perform a duty that is "ministerial, clearly defined, and peremptory" as opposed to duties within the officer's discretion. *Carpet, Linoleum & Resilient Tile Layers, Local Union No. 419 v. Brown*, 656 F.2d 564, 566 (10th Cir. 1981) (quoting *Schulke v. United States*, 544 F.2d 453, 455 (10th Cir. 1976)). But the fact that an official's duty entails some discretion does not necessarily shield him from mandamus. As Chief Justice Taft explained,

> Mandamus issues to compel an officer to perform a purely ministerial duty. It cannot be used to compel or control a duty in the discharge of which by law he is given discretion. The duty may be discretionary within limits. He can not transgress those limits, and if he does so, he may be controlled by injunction or mandamus to keep within them. The power of the court to intervene, if at all, thus depends upon what statutory discretion he has.

*Work v. United States ex rel. Rives*, 267 U.S. 175, 177 (1925).

Mr. Simmat's claim falls within this domain. His claim is not one to control or override the discretion of the prison dentists, but simply to be examined by the dentists and to receive whatever care they believe is necessary in their professional judgment, and under the Eighth Amendment. *See* Complaint, R. Doc. 1 at 5–6. This is not to say that Mr. Simmat is entitled to the full measure of relief demanded in his complaint, namely, an order "specifying that all of

19

plaintiff's dental deficiencies be made good, whether or not procedures required to accomplish that are within currently approved dental procedures within the BOP for its prisoners." *Id.* Not only does this relief demand action beyond routine dental care under BOP policy; it exceeds the scope of Mr. Simmat's alleged injuries. We do hold, however, that Mr. Simmat is not barred by sovereign immunity from obtaining judicial relief on his constitutional claim.

In sum, as a result of congressional action in 1875 (creating general federal question jurisdiction), 1962 (extending mandamus jurisdiction to all federal district courts), and 1976 (waiving sovereign immunity in cases for nonmonetary relief against federal officials and agencies), federal district courts now have jurisdiction over claims by federal prisoners against federal prison officials seeking vindication of their constitutional rights under either 28 U.S.C. § 1331 or 28 U.S.C. § 1361, and may obtain relief in the nature of either injunction or mandamus. In many cases, these forms of relief may be interchangeable. *See, e.g.*, *Panama Canal Co. v. Grace Line, Inc.*, 356 U.S. 309, 318 (1958) (concluding, in a suit to compel a federal entity to fix new tolls, that "[t]he principle is no different than if mandamus were sought"); *Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir. 1986) ("In effect, the injunction is no different than the mandamus. When the effect of a mandatory injunction is equivalent to the issuance of mandamus it is governed by similar considerations."); *Carpet,*

20

*Linoleum, and Resilient Tile Layers*, 656 F.2d at 567 ("A mandatory injunction such as the one sought here is essentially in the nature of mandamus.").  In cases seeking specific relief of a nondiscretionary nature, mandamus would seem to be the more closely tailored avenue for relief.

### E. Exhaustion of Administrative Remedies

Although the district court had jurisdiction over his claims for nonmonetary relief against the prison dentists, Mr. Simmat failed to state a claim upon which relief may be granted because he did not exhaust his administrative remedies. The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. 1997e(a).  Mr. Simmat is a prisoner confined in USP Leavenworth, and this is an action "with respect to prison conditions" brought under federal law. The district court correctly determined that the PLRA required him to exhaust his administrative remedies.  *See* Order of Jan. 9, 2003, R. Doc. 3 at 1.

Shortly after the complaint was filed, the district court ordered Mr. Simmat's former co-plaintiff, James Maass, to supplement his complaint with a statement of exhaustion of administrative remedies.  *See* Order of Jan. 9, 2003, R. Doc. 3 at 2.  This order did not extend to Mr. Simmat because the complaint

21

states that he exhausted his administrative remedies. *Id.* at 1. The complaint alleges that "Plaintiff Simmat has exhausted administrative remedies in Case Number 212339-A1 of the United States Bureau of Prisons," Complaint, R. Doc. 1 at 1, and that "though Simmat subsequently filed for administrative remedy to be put on said [treatment] list, defendants have taken assertive action to block Simmat's name from said list." *Id.* at 5. Although the complaint states that Mr. Simmat exhausted his administrative remedies, neither the complaint nor the record provides information sufficient to satisfy the exhaustion requirement.

To satisfy the PLRA's exhaustion requirement, a prisoner must do more than allege that he has exhausted his administrative remedies. To state a claim for relief, a prisoner must (1) make a "short and plain statement of the claim," Fed. R. Civ. P. 8, and (2) "attach[] a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome." *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1210 (10th Cir. 2003) (quoting *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000)). Unlike his co-plaintiff, Mr. Simmat did not provide documentation of his pursuit of administrative remedies. As a result, the record does not indicate how he attempted to address the injuries underlying his complaint. The record includes Mr. Simmat's Inmate Request to Staff forms, but the documents submitted by Mr.

22

Maass indicate that additional review was available to inmates. Furthermore, the Inmate Request to Staff forms filed by Mr. Simmat did not allege denial of treatment; they requested that he be placed on the treatment list. Mr. Simmat provides no evidence that he pursued the relief he now seeks through available administrative channels. The Court thus has no basis to determine whether he exhausted his administrative remedies for the claims raised in his complaint.

At oral argument, Mr. Simmat's appointed counsel suggested, by way of explanation for his failure to exhaust, that Mr. Simmat "felt stuck." The question, however, is not whether he *felt* stuck, but whether he *was* stuck. We do not mean to criticize counsel, whose explanation for Mr. Simmat's delinquency is entirely plausible, and who was unquestionably stuck with the record below. We mean only to stress that the BOP provided a mechanism for administrative review, and the PLRA obligated Mr. Simmat to use it before coming to federal court. *See* 28 C.F.R. § 542.10–.19 (outlining the federal prisons' Administrative Remedy Program for claims arising out of prison conditions).

Mr. Simmat argues that his claim should be subject only to the common law doctrine of exhaustion, a matter of judicial discretion. *See United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 550 (10th Cir. 2001) (explaining, in a tribe's suit to compel recognition by the Bureau of Indian Affairs, that "in cases not governed by the APA, the doctrine of exhaustion applies as a matter of

23

judicial discretion"). But this argument applies only to cases where there is no other statutory exhaustion requirement. Prison conditions litigation is not one of these.

Exhaustion is not some arbitrary hurdle to make it difficult for prisoners to sue. It serves "the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992). By giving the agency a chance to correct its own errors, administrative review often obviates the need for litigation. Agency review typically moves much more quickly than federal litigation. *See, e.g.*, *Thomas v. Woolum*, 337 F.3d 720, 732 (6th Cir. 2003) ("[I]t is in the prison grievance process that inmates will, for most practical purposes, receive their swiftest and most effective remedies."). Indeed, Mr. Simmat's claim is an excellent illustration of why exhaustion is essential to the efficient resolution of claims. Mr. Simmat has litigated this case in court for well over two years, presumably without receiving dental care. Had he pursued administrative remedies, Mr. Simmat almost certainly would have received dental treatment by now, or an explanation why not.

Developing the factual record through administrative review is particularly important in pro se prison litigation, where exhaustion "serves the same purpose and is very similar to discovery in ordinary litigation." *Brice v. Day*, 604 F.2d 664, 667 (10th Cir. 1979) (per curiam), *disapproved on other grounds by*

24

*McCarthy v. Madigan*, 503 U.S. 140 (1992). At the very least, the administrative remedy process would have given Mr. Simmat a definitive answer to his request for treatment, explaining why the prison believes he is not entitled to what he seeks. Because Mr. Simmat's claims against the prison dentists did not pass through the administrative review process, the scant record of this case sheds no light on what happened after his final dental examination in August 2000. We can only guess why Mr. Simmat was unable to get dental treatment. Was this the result of his own failure to show up for an appointment? Was it due to overwork and understaffing in the Leavenworth dental department? Was it just a bureaucratic snafu? Was it the product of malicious dental neglect, or a secret and unstated BOP policy against providing proper dental care, as Mr. Simmat claims? If Mr. Simmat had pursued his administrative remedies, he would have received either relief or an explanation, and the courts would have something to review.

Exhaustion is a pleading requirement rather than an affirmative defense. *Steele*, 355 F.3d at 1210. Mr. Simmat's failure to adequately plead exhaustion therefore amounts to a failure to state a claim upon which relief can be granted. *Id.* When a prisoner fails to state a claim, the PLRA requires the court to dismiss the complaint sua sponte:

> The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions . . . if the court

25

> is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

42 U.S.C. § 1997e(c)(1). Because Mr. Simmat failed to exhaust his administrative remedies, we must dismiss the complaint for failure to state a claim.

## III. Mr. Simmat's Claim Against the Bureau of Prisons

In his briefs in this Court, Mr. Simmat also claims that the BOP violated his Eighth Amendment right to adequate medical treatment by following a de facto policy against routine dental care. The BOP's dental care policy, recorded in a BOP Policy Statement, provides that prisoners shall receive both routine and emergency dental care. *See* Policy Statement 6000.05 § 5(c)(1), (2). Emergency care is available at sick call on a twenty-four-hour basis. *Id.* § 5(c)(1). The BOP provides routine care "as resources of staff, time, and materials are available and commensurate with the inmate's ability to maintain good oral health." *Id.* § 5(c)(2). Mr. Simmat alleges that the BOP failed to follow its written policy, instead refusing to provide routine care to inmates.

The BOP argues that Mr. Simmat's claim is barred by sovereign immunity. Mr. Simmat argues that the United States, and therefore the BOP, waived sovereign immunity in the APA, which provides:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning

26

of a relevant statute, is entitled to judicial review thereof. . . . The United States may be named as a defendant in any such action [for relief other than money damages], and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance.

*Id.* § 702. If the BOP is an agency within the meaning of the APA, Mr. Simmat can pursue a claim against the BOP itself.

The language of the APA indicates that the BOP is an agency within the meaning of the statute. For purposes of the APA, "'agency' means each authority of the Government of the United States, whether or not it is within or subject to review by another agency." 5 U.S.C. § 551(1) (excepting certain entities, including Congress and the federal courts, but not including the BOP). Interpreting § 551(1), the Seventh Circuit held, "The Bureau of Prisons is part of the Department of Justice, and thus undeniably an 'agency' if this language be taken literally." *White v. Henman*, 977 F.2d 292, 293 (7th Cir. 1992); *see also Bunn v. Conley*, 309 F.3d 1002, 1009 (7th Cir. 2002) ("The APA applies to the Bureau of Prisons . . . and therefore may be the appropriate way to contest the Bureau's implementation of [a Program Statement]"). The D.C. Circuit reached the same conclusion in *Ramer v. Saxbe*, in which federal prisoners sought declaratory, injunctive, and mandamus relief against the Attorney General and the Director of the BOP. 522 F.2d 695, 697 (D.C. Cir. 1975); *see also Krilich v.*

27

*Bureau of Prisons*, 346 F.3d 157, 159 (6th Cir. 2003) (dismissing a federal prisoner's challenge to prison conditions because "the APA falls within the broad sweep of claims subject to the exhaustion requirements of the PLRA"); *Gunderson v. Hood*, 268 F.3d 1149, 1152–54 (9th Cir. 2001) (analyzing a BOP program statement under the APA); *but cf. Clardy v. Levi*, 545 F.2d 1241, 1245 (9th Cir. 1976) (holding that the APA does not apply to prison disciplinary proceedings, but acknowledging that neither the text of the statute nor its legislative history suggest that unexpressed exceptions to its coverage exist). Because the BOP is an agency within the meaning of the APA, sovereign immunity does not bar Mr. Simmat's claim.[11]

We nonetheless are unable to reach Mr. Simmat's claim against the BOP because he did not raise it in the district court. Not only did Mr. Simmat fail to raise the claim below; he specifically denied having raised it. In his response to the defendants' Motion to Dismiss, Mr. Simmat stated:

> Plaintiffs consider the dental policy of the United States

---

[11] The defendants argue that sovereign immunity bars Mr. Simmat's claim against the BOP because the Program Statement, as an internal agency guideline not adopted under APA procedures, does not create enforceable entitlements. *See Miller v. Henman*, 804 F.2d 421, 426 (7th Cir. 1986) (holding that a BOP program manual "not promulgated under the Administrative Procedure Act or published in the Code of Federal Regulations . . . does not create legally enforceable entitlements"). Mr. Simmat does not rely on an entitlement created by the Policy Statement. He relies on a constitutional right that USP Leavenworth allegedly denied by following an unwritten policy against routine dental care. Whether the Policy Statement was adopted under APA procedures is not relevant to his claim.

28

> Bureau of Prisons to be very good, having read it in its entirety, and made no complaint about it, nor do they so complain now. The issue in the instant action . . . is that the good doctors have failed to meet that policy, and misused it, and subverted it.

Response, R. Doc. 31, at 16. Mr. Simmat changes course on appeal, complaining that the BOP had a de facto policy against routine dental care and refused to provide treatment unless a prisoner experienced pain. *See* Supp. Br. 42. A litigant is not entitled to disavow a claim before one court only to spring it on his opponent at the next stage of the proceedings. *See Tele-Communications, Inc. v. Comm'r*, 104 F.3d 1229, 1232–33 (10th Cir. 1997) (explaining that review of issues not raised below "would undermine the need for finality in litigation and conservation of judicial resources . . . and would often allow a party to raise a new issue on appeal when that party invited the alleged error below"). Mr. Simmat failed to present his claim against the BOP to the district court, and we will not address it for the first time on appeal.

## V.  Conclusion

The district court had subject matter jurisdiction in this case under 28 U.S.C. § 1331 or 1361. The cause of action arose directly under the Eighth Amendment, and relief against the prison dentists would take the form of a mandatory injunction or, more precisely, relief in the nature of mandamus. Sovereign immunity does not deprive this Court of jurisdiction over Mr. Simmat's claims. However, because he failed to present his claim against the BOP in the

29

district court, and because he failed to exhaust administrative remedies for his claim against the prison dentists, Mr. Simmat fails to state a claim upon which relief can be granted.  The district court's decision is therefore REVERSED with instructions to DISMISS WITHOUT PREJUDICE.